AMERICAN MANAGEMENT, INC., Richard B. McCool, Sr. and Richard B. McCool, Jr., Appellants–Defendants,

v.

MIF REALTY, L.P. as Successor in Interest to Resolution Trust Corporation, as Conservator for Transohio Federal Savings Bank, Appellee–Plaintiff.

No. 49A05–9507–CV–279.

Court of Appeals of Indiana.

June 4, 1996.

Eric C. Redman, John L. Stewart, Cohen & Malad, Indianapolis, for Appellants.

James A. Knauer, Marcia E. Roan, Kroger Gardis & Regas, Indianapolis, for Appellee.

## OPINION

SHARPNACK, Chief Judge.

American Management, Inc., Richard B. McCool, Sr. and Richard B. McCool, Jr. (collectively "appellants") appeal the entry of summary judgment in favor of MIF Realty, L.P. ("MIF") as successor in interest to Resolution Trust Corporation ("RTC"), as conservator for Transohio Federal Savings Bank ("Transohio"). The parties raise three issues for our review which we restate as:

(1) whether the trial court erroneously relied upon undesignated evidence;

(2) whether the trial court properly entered summary judgment on the question of MIF's right to recover the debt; and

(3) whether the trial court erroneously entered summary judgment on the question of the amount owed to MIF.

We affirm in part, reverse in part, and remand.

### Procedural History

On June 26, 1992, the original plaintiff, Transohio, filed an action against American Management to recover under a promissory note, to foreclose a mortgage on real estate owned by American Management, to appoint a receiver, and to recover against the McCools on a guaranty agreement. On July 10, 1992, Transohio was placed in a receivership and RTC was named as the receiver. In addition, Transohio was placed in conservatorship and RTC was named as the conservator. As the receiver for Transohio, RTC entered into an agreement to purchase all of the deposits, assets, and secured liabilities of Transohio. Accordingly, as conservator for Transohio, RTC became the owner of the note, mortgage, and guaranty, which formed the basis of Transohio's action.

On August 5, 1992, RTC sought substitution as plaintiff as the real party in interest, which was granted. Then, on August 7, 1992, RTC filed its notice of removal and the cause was removed to the United States District Court for the Southern District of Indiana. On August 25, 1992, the appellants filed their answer and counterclaim. In the counterclaim, the appellants alleged that certain funds were not disbursed pursuant to the note and that the appellants were entitled to offset such amounts against the total debt owed.

On May 27, 1993, GE Capital Realty Group, Inc. ("GE") moved for substitution as the real party in interest, stating that GE was the new owner of the note and mortgage. The following day, GE was substituted as plaintiff.

On July 16, 1993, MIF sought substitution as the real party in interest, stating that it owned the note, mortgage, and guaranty. MIF claimed that GE was the "Sub–Asset

Manager" for MIF rather than the owner of the note and mortgage. On July 19, 1993, MIF was substituted as the new plaintiff. On July 29, 1994, MIF filed a motion for summary judgment.

On November 21, 1994, the District Court concluded that it lacked subject matter jurisdiction with the substitution of MIF for RTC. The case was remanded to the Marion Superior Court without a decision on the motion for summary judgment. Thus, on December 8, 1994, MIF filed a renewed motion for summary judgment. On February 14, 1995, the trial court granted MIF's motion and entered findings of fact and conclusions thereon. The findings and conclusions were subsequently amended on February 24, 1995.

On March 16, 1995, the appellants filed a motion to correct errors, which was denied. They now appeal the trial court's determination.

*Facts*

On February 12, 1990, American Management executed a promissory note to Transohio for $1,600,000. The note called for sixteen payments of $14,635.83, with a final balloon payment due on August 1, 1991. The final balloon payment was equal to the entire amount of the unpaid principal balance, accrued interest, and all charges due and unpaid. The note was secured by a mortgage on real estate owned by American Management known as the Red Mill I Apartments, and the repayment terms of the note were guaranteed by the McCools. American Management failed to pay the note at maturity.

*Standard of Review*

When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court. *Ayres v. Indian Heights Volunteer Fire Dep't,* 493 N.E.2d 1229, 1234 (Ind.1986). We may consider only those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion for summary judgment. Ind.Trial Rule 56(C), (H); *Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 434 (Ind.1993). The

moving party in a motion for summary judgment bears the burden of making a *prima facie* showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Hermann v. Yater,* 631 N.E.2d 511, 513 (Ind. Ct.App.1994), *reh'g denied.* Once the movant satisfies this burden, the burden shifts to the nonmoving party to produce specifically designated facts showing the existence of a genuine issue. *Id.*

A factual issue is "genuine" if it is not capable of being conclusively foreclosed by reference to undisputed facts. *Haniford v. Belanger,* 433 N.E.2d 39, 42 (Ind.Ct.App. 1982), *reh'g denied.* Although there may be genuine disputes over certain facts, a fact is "material" when its existence facilitates the resolution of an issue in the case. *Yaney by Yaney v. McCray Memorial Hosp.,* 496 N.E.2d 135, 136 (Ind.Ct.App.1986). Again, the threshold burden is on the movant to demonstrate the absence of a genuine issue of material fact. *See Hermann,* 631 N.E.2d at 513. This burden is not satisfied where the facts presented as undisputed can support different inferences. *See County of LaPorte v. James,* 496 N.E.2d 1325, 1328 (Ind. Ct.App.1986). Moreover, any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 633 (Ind.1991).

Finally, when the trial court enters findings of fact and conclusions thereon in ruling on a motion for summary judgment, the findings and conclusions "merely afford the appellant an opportunity to address the merits of the trial court's rationale". *Campbell v. Spade,* 617 N.E.2d 580, 582 (Ind.Ct. App.1993). The findings and conclusions also aid the appellate court by providing a statement of reasons for the trial court's action. *Id.* However, they have no other effect. *Id.* Rather, we must base our decision upon the material designated to the trial court. *Shourek v. Stirling,* 652 N.E.2d 865, 867 (Ind.Ct.App.1995).

## I.

The first issue raised by the parties is whether the affidavit of indebtedness from Michael Hudspeth, filed January 26, 1995 (the "second Hudspeth affidavit"), was insufficient to establish the amount owed to MIF. Specifically, the parties dispute whether Hudspeth had personal knowledge of American Management's debt.[1] In the affidavit, Hudspeth indicated that American Management owed MIF "$1,812,086.16, plus interest accruing from January 16, 1995, at the per diem rate of $485.19, plus late charges, plus reasonable attorney's fees." Supp.Record, item R. The affidavit was offered by Hudspeth "to the best of his knowledge and belief, in his capacity as Asset Manager of GE Capital Realty Group, Inc., the authorized representative of the Plaintiff, MIF Realty, L.P. ('MIF Realty'), based upon a review of the files in his possession." Supp.Record, item R. The appellants maintain that Hudspeth did not have personal knowledge of the amount of the debt because Hudspeth was not familiar with the note until 1993 when MIF acquired it from RTC.

However, we need not address the merits of this argument because the trial court improperly considered the affidavit, as it had not been designated.[2] A party is required to designate those materials which it contends support or preclude the entry of summary judgment. T.R. 56(C). As the reviewing court, we are not free to search the entire record to determine the propriety of the trial court's entry of summary judgment. *Jackson v. Blanchard,* 601 N.E.2d 411, 415 (Ind.Ct.App.1992). Only those portions of the record that were specifically designated to the trial court comprise the entire record for appellate review. *Id.; see Keating v. Burton,* 617 N.E.2d 588, 591 (Ind.Ct.App. 1993), *reh'g denied, trans. denied.* The trial rule, however, does not dictate the manner in which a party must designate the material to the trial court. *Nat'l Bd. of Exmrs. for Osteopathic Physicians & Surgeons, Inc. v. American Osteopathic Ass'n,* 645 N.E.2d 608, 615 (Ind.Ct.App.1994). Thus, the parties have the discretion to designate the material either in the summary judgment motion itself, in a separate filing, or in a brief in support of or in opposition to the motion for summary judgment. *Id.* The parties act within their discretion as long as they inform the trial court of the specific material upon which the parties rely in support of or in opposition to a motion for summary judgment. *Id.*

Here, the original motion for summary judgment was filed on July 29, 1994, in the federal district court. In addition, on July 29, 1994, MIF filed an affidavit from Hudspeth (the "first Hudspeth affidavit"), in which Hudspeth indicated that the amount of indebtedness was "in the sum of $1,872,-190.67, plus interest accruing from July 1, 1994 at the per diem rate of $507.53, plus late charges, plus reasonable attorney's fees." Supp.Record, item H.

On December 8, 1994, after the case was remanded from the federal district court to the Marion Superior Court, MIF filed a renewed motion for summary judgment and a designation of evidentiary matter. MIF designated the first Hudspeth affidavit filed on July 29, 1994, among other items. However,

1. Ind.Trial Rule 56 requires an affidavit to be made with personal knowledge, to set forth such facts as would be admissible into evidence, and to show that the affiant is competent to testify to the matters asserted in the affidavit. T.R. 56(E). Notwithstanding T.R. 56, we have held that if the knowledge and competence of the affiant can be inferred from the affidavit, the affidavit "will pass muster." *Skaggs v. Merchants Retail Credit Ass'n, Inc.,* 519 N.E.2d 202, 203 (Ind.Ct.App. 1988).

2. In addition, the appellants have waived review of this issue. A complaining party has a duty to direct the trial court's attention to a defective affidavit. *Paramo v. Edwards,* 563 N.E.2d 595, 600 (Ind.1990). An affidavit which does not satisfy the requirements of T.R. 56(E) is subject to a motion to strike, and a defect is waived in the absence of a motion to strike or other objection. *Id.* Because the appellants neither filed a motion to strike nor made an objection, they have waived this issue for review.

Notwithstanding our determination that the appellants waived this issue for review, we find that Hudspeth's personal knowledge is inferable from his position and from his possession of the files. An unduly burdensome duty would be imposed on bank and loan officials if the personal knowledge requirement could be satisfied only by an affidavit from the executing officer of the note, mortgage or loan.

MIF did not file the second Hudspeth affidavit of indebtedness, the one ultimately relied on by the trial court, until January 26, 1995. From our review of the record and the supplemental record, this affidavit, which is the basis of this personal knowledge dispute, was never designated to the trial court as required by T.R. 56(C).

Moreover, it is unclear whether MIF informed the trial court of its reliance on the second Hudspeth affidavit filed on January 26, 1995. MIF filed its renewed motion for summary judgment and designation of materials on December 8, 1994. The second Hudspeth affidavit was conspicuously absent from the designation. The record of proceedings does not indicate that a hearing was held on the motion,[3] where perhaps an oral designation could have been made.[4] It appears that MIF did not inform the trial court that it relied on the second Hudspeth affidavit to support the entry of summary judgment and, therefore, the affidavit was never designated as required by T.R. 56(C). *See American Osteopathic Ass'n*, 645 N.E.2d at 615. As a result, the trial court erroneously considered it in ruling on the motion for summary judgment.[5] Moreover, in our review of this case, we may not consider the second Hudspeth affidavit.

■ However, the mere fact that the trial court erroneously considered the second Hudspeth affidavit does not require us to reverse the judgment. Since we review this case according to the same standard as the trial court, we will affirm the entry of summary judgment if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Beradi v. Hardware Wholesalers, Inc.*, 625 N.E.2d 1259, 1261 (Ind.Ct.App.1993), *reh'g denied, trans. denied*. Based upon our review of those materials, we must determine whether there is a genuine issue of material fact and whether MIF is entitled to judgment as a matter of law. In doing so, we are faced with the issues of whether MIF has demonstrated its right to recover the debt as a matter of law and whether there is a genuine issue of material fact as to the amount owed to MIF. We take each of these issues in turn.

## II.

■ The second issue for our review is whether MIF demonstrated a right to recover the debt as a matter of law. In the renewed motion for summary judgment, MIF designated the complaint, mortgage, note, guaranty, and the first Hudspeth affidavit of indebtedness to establish that there were no issues of material fact and that it was entitled to judgment as a matter of law.[6] The note defined the appellants' liability and the guaranty authorized the individual liability of the McCools. By introducing the note, MIF established a *prima facie* case to recover the debt from the appellants. *See Gradeless v. Gradeless*, 114 Ind.App. 10, 49 N.E.2d

---

**3.** In the trial court's chronological case summary, a docket entry, dated December 12, 1994, indicates that a hearing on MIF's renewed motion for summary judgment had been set for January 30, 1995. However, the docket entry for January 30, 1995, merely states that the "COURT TAKES MATTER UNDER ADVISEMENT". Record, p. vi. The record does not demonstrate whether a hearing was held.

**4.** *Compare Terrell v. Rowsey*, 647 N.E.2d 662, 666 (Ind.Ct.App.1995), *trans. denied* (finding that Terrell's argument that he satisfied the designation requirement by an oral designation to the trial court failed, inasmuch as his brief did not include a citation in the record to an oral designation).

**5.** In finding 15, the trial court found that "Pursuant to the affidavit of Michael Hudspeth filed January 27, 1995 MIF Realty is presently due from American Management the sum of $1,812,086.16, plus interest accruing from January 16,

1995 at the per diem rate of $485.19, plus unspecified late charges, plus reasonable attorney's fees which are requested in the amount of $15,000.00,...." Supp.Record, Findings. This finding essentially tracks the language of the second Hudspeth affidavit, and from this finding it is evident that the trial court improperly considered the affidavit in ruling on MIF's motion for summary judgment. *See Campbell*, 617 N.E.2d at 582 (holding that the findings and conclusions aid our review by providing a statement of the reasons for the trial court's actions).

**6.** On appeal, MIF argues that the second Hudspeth affidavit was sufficient to demonstrate the absence of a genuine issue of material fact and to shift the burden to the appellants. However, as previously discussed, the second affidavit was not properly designated and, therefore, we may not consider it.

398, 401 (1943) (holding that the introduction of a note establishes a *prima facie* case of recovery on an indebtedness.) Therefore, the burden shifted to the appellants to demonstrate the existence of a genuine issue of material fact as to MIF's right to recover under the note. *See Hermann*, 631 N.E.2d at 513.

■■ However, the appellants did not designate any evidence to establish a genuine issue of material fact as to MIF's right to recover the debt. In fact, in their brief, the appellants do not dispute that they are indebted to MIF. Rather, they dispute only the amount of the indebtedness. Because the facts are undisputed to the extent that MIF has a right to recover the debt, there is no genuine issue of fact. *See Haniford*, 433 N.E.2d at 42. Moreover, because there are no genuine issues of fact and because MIF designated the note, MIF is entitled to recover the debt as a matter of law. *See Gradeless*, 114 Ind.App. at 10, 49 N.E.2d at 401. Therefore, the trial court properly entered summary judgment as to MIF's right to recover the debt.

### III.

■■ While the trial court properly entered summary judgment on MIF's right to recover, it erroneously entered summary judgment on the *amount* of indebtedness. In support of its motion for summary judgment, MIF submitted the first Hudspeth affidavit, which established that the amount due under the note equaled $1,872,190.67 plus interest at the per diem rate of $507.53 plus late charges and reasonable attorney's fees.

In response, the appellants submitted the affidavit of McCool, Sr. (the "McCool affidavit"). In that affidavit, McCool alleged the appellants were entitled to reduce the amount owed to MIF because certain funds, which were deducted from the proceeds of the loan to American Management, were improperly disbursed by Transohio, the original payee of the note. McCool identified these funds [7] as follows:

(a) $26,348.78 for the payoff of a first mortgage to Transohio;

(b) $69,720.10 for delinquent real estate taxes; [8]

(c) $67,184.81 for real estate taxes assessed in 1989 and due and payable in May and November, 1990;

(d) $7,360.72 for real estate taxes assessed in 1990 and due and payable in 1991;

(e) $41,767.00 for prepaid interest; and

(f) $16,000.00 for a loan commitment fee.

Thus, McCool concluded that "[t]he correct amount of indebtedness is $1,581,388.79 less ... other amounts described in this affidavit ... for an accurate payoff figure of $1,225,-57.30 [sic] [$1,225,551.30]." Supp.Record, item K, p. 4. In effect, McCool maintained that the appellants were entitled to reduce the amount of MIF's recovery under the note by an amount equal to that which was deducted from the loan proceeds at the loan's inception, but which was not properly disbursed by Transohio. Consequently, MIF agreed to reduce the total amount due by $158,661.31.[9] MIF agreed to the reduction for the "sole purpose of resolving this matter through the summary judgment mecha-

7. Briefly, we note that the appellants filed a counterclaim in which they alleged that certain funds were improperly disbursed or never credited to their account. These alleged improperly disbursed funds differ slightly from the amounts identified in the McCool affidavit. Further, from the record of proceedings, it appears that the trial court did not address these funds detailed in the counter-claim but instead addressed those amounts in the affidavit. Moreover, the parties each addressed the amounts identified in the affidavit rather than those identified in the counter-claim.

8. In response to the McCool affidavit, MIF submitted the affidavit of Larry Kugelman, Deputy Treasurer of the Office of the Treasurer, who stated that payments for delinquent real estate taxes in the amount of $69,720.10 had been paid. The affidavit established that the amount was deducted from the original loan proceeds and properly disbursed, contrary to the position maintained in the McCool affidavit. This affidavit was also designated to the trial court. Upon the trial court's review, it concluded that the appellants' claim to a reduction equal to $69,-720.10 was without merit. We agree.

9. This amount was calculated by taking $228,-381.41, the amount of misapplied funds described in the McCool affidavit and subtracting $69,720.10, the amount which the Kugelman affidavit established had been properly disbursed.

nism,...." Supp.Record, item M, p. 3. MIF indicated that it would introduce evidence to support the contention that the disputed funds were properly disbursed if the cause proceeded to trial.

After the trial court adopted MIF's calculation of the principal and interest owed from the second Hudspeth affidavit, disregarded the McCool affidavit entirely,[10] and deducted the amount which MIF stipulated to, it calculated the final balance owed at $1,660,837.51. The trial court used the following formula to reach its final calculation:

| "Principal and Interest through January 16, 1995 | $1,812,086.16 |
| Interest Accrued from January 16, 1995 through January 30, 1995 | 6,792.66 |
| Payment Received from Receiver after January 30, 1995 | (14,380.00) |
| Offset Agreed to by Plaintiff for Judgment Purposes | (158,661.31) |
| Attorney Fees | 15,000.00 |
| **TOTAL** | **$1,660,837.51"** |

Supp.Record, item V, p. 12 (original emphasis).

In this appeal, the parties dispute whether the trial court erroneously permitted MIF to concede the $158,661.31 amount for purposes of the summary judgment motion and whether the trial court properly applied the concession in arriving at the total balance owed. MIF argues that their "asserted right of setoff, ... constituted a separate and independent indebtedness from MIF Realty's right to payment under the Note." Appellee's brief, p. 27. Thus, MIF argues that the trial court correctly deducted the stipulated amount after calculating the balance due under the note. The appellants argue that the trial court should have recalculated the debt after deducting the stipulated amount from the principal balance. The appellants claim that because the stipulated amount represented funds which were not disbursed at the loan's inception, the principal amount under the note should have been reduced, which in turn, affected the amount of accumulated interest. The resolution of this dispute depends on whether the stipulated amount constituted a "set-off."

A "set-off" is a "counter-action *against the plaintiff* and grows out of matter *independent* of [the plaintiff's] cause of action. *Sams v. Kern,* 121 Ind.App. 370, 373, 98 N.E.2d 920, 921 (1951) (original emphasis); *see* BLACK'S LAW DICTIONARY 1372 (6th ed. 1990) (defining a "set-off" as a "counterclaim demand which defendant holds against plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action.") Thus, a set-off exists between two persons, "each of whom under an independent contract, express or implied, owes an ascertained amount to the other...." *Teeters v. City Nat'l Bank of Auburn,* 214 Ind. 498, 14 N.E.2d 1004, 1005 (1938). In applying a set-off, we "set off [the parties'] mutual debts by way of deduction, so that in an action brought for the larger debt, the residue only, after such deduction, may be recovered." *Id.* In other words, the set-off amount must be subtracted from the total amount of the larger debt. In determining whether the pleading is a set-off, this court must look to the facts alleged and the relief sought. *See Sams,* 121 Ind. App. at 373, 98 N.E.2d at 921.

Applying these principles, we find that MIF's agreement not to contest those funds disputed by the appellants did not constitute a "set-off." Any right that the appellants had to recover those funds arose from the same promissory note under which MIF's cause of action arose. This right to recover did not arise out of an independent contract between the appellants and MIF. Rather, the appellants' right to recover resulted from MIF's concession. Without such a concession, any right that the appellants had to recoup the money would have to be determined at trial. As such, we find that the stipulated amount did not constitute a "set-off." As a result, the trial court did not have a legal obligation to subtract that amount from the final balance owed under the promissory note.

10. The trial court found that the McCool affidavit was insufficient for two reasons. First, while McCool claimed that MIF had not deducted property tax payments which American Management made from the note balance, the trial court found that nothing in the note required deductions from the principal for property tax payments. Second, the trial court found that McCool failed to allow for interest on the principal from 1992, which the trial court found was clearly authorized by the note.

Because the trial court did not have to subtract the stipulated amount from the larger debt as a matter of law, it was free to exercise its discretion and apply the concession as intended by the parties. However, what the parties intended is unclear and disputed. On the one hand, MIF intended the stipulated amount to constitute a "set-off", which would require the stipulated amount to be subtracted from the larger debt. On the other hand, the appellants intended the stipulated amount to be subtracted from the principal balance under the note, which would then require a recalculation of the interest. This issue cannot be resolved by referring to the undisputed facts and, therefore, a genuine factual issue remains. *See Haniford*, 433 N.E.2d at 42. In addition, this factual dispute is material because its existence facilitates the resolution of the issue in this case which is the amount owed to MIF. *See Yaney*, 496 N.E.2d at 136. Thus, despite MIF's effort to resolve the dispute through summary judgment by agreeing not to contest those amounts raised by the appellants, this stipulation did not remedy the problem. Instead, there still remains a genuine issue of material fact as to how the parties intended that the stipulated amount be applied. As a result, the trial court erroneously entered summary judgment to the extent that it calculated the amount of MIF's recovery. In addition, because the trial court relied on an undesignated affidavit in calculating the amount owed to MIF, we must remand this cause to the trial court.

Accordingly, the trial court's entry of summary judgment as to MIF's right to recover is affirmed, the trial court's entry of summary judgment as to the final amount owed to MIF is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

RUCKER and DARDEN, JJ., concur.