**Barbara J. ROBERTSON,
Appellant–Plaintiff,**

v.

**Terrell M. BOND, Jr. and Charlie
Richardson, M.D., Appellees–
Defendants.**

**No. 02A03–0207–CV–239.**

Court of Appeals of Indiana.

Dec. 19, 2002.

---

John B. Powell, Nathan S.J. Williams, Shambaugh, Kast, Beck & Williams, LLP, Fort Wayne, IN, for Appellant.

Larry L. Barnard, Calvert S. Miller, Miller Carson Boxberger & Murphy, LLP, Fort Wayne, IN, for Appellee, Terrell M. Bond, Jr., M.D.

Cathleen M. Shrader, John M. Clinton, Jr., Barrett & McNagny, LLP, Fort

Wayne, IN, for Appellee, Charlie E. Richardson, MD.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Barbara J. Robertson appeals the trial court's grant of summary judgment to Drs. Terrell M. Bond, Jr. and Charlie E. Richardson in the medical malpractice action she had brought against the doctors.

We reverse.

### ISSUE

Whether the trial court erred in granting the doctors' motions for summary judgment.

### FACTS

In May of 1996, Barbara Robertson saw her family physician with complaints of pain in her pelvic area and bleeding. Her doctor referred her to Dr. Reddy, who had a pelvic ultrasound test performed on Robertson on May 28, 1996. According to the report, a mass measuring 4 by 6 centimeters was observed on the left side of the area. Robertson then underwent a dilation and curettage, by Dr. Reddy, on May 30, 1996. Robertson continued to experience pain on her left side and bleeding. After a June 5, 1996 MRI of the pelvic area, the report noted something "to the left of the midline" which "could be the solid mass described on the [previous] ultrasound" and a "7 × 1.5 cm fluid containing structure to the left of the uterus." (App. 150). Dr. Reddy recommended that Robertson undergo a total abdominal hysterectomy[1] (TAH).

Robertson reported her continued left side pain to Dr. Reddy and to her physician. Robertson then saw Dr. Bond, who specialized in gynecology, for a second opinion about a possible TAH. Robertson told Dr. Bond about her pelvic pain and bleeding. After Dr. Bond reviewed the ultrasound and MRI test reports, he recommended a TAH and "possible bilateral salpingo-oophorectomy."[2] Robertson agreed to the surgery. Dr. Bond scheduled it for July 11, 1996, and arranged for Dr. Richardson to assist with the surgery.

The doctors performed a TAH and a right salpingo-oophorectomy. After the surgery, Robertson continued to experience pain on the left side of her pelvic area. She reported the pain to Dr. Bond in late July and in August; he prescribed pain medication. Finally, after her complaint of continued pain on September 4, 1996, Dr. Bond ordered another pelvic ultrasound test. This test, performed on September 5, 1996, was reported as showing "a complex primarily solid mass" which "measure[d] 7 × 6 cm;" the report stated that "on the previous study" of "May 28, 1996," the mass was "measured at 6.1 × 4.6 cm." (App. 188). The report, authored by Gregg R. Mattison, M.D., concluded with the "impression" that there had been an "enlargement of the solid mass within the pelvis." *Id.*

Robertson then consulted another gynecologist, Dr. Amechi. Based upon the September 5, 1996 ultrasound "which revealed the presence of a solid mass" in Robertson's pelvis, Dr. Amechi performed a diagnostic laparoscopy. (App. 190). Thereafter, he performed a laparotomy, during the course of which he removed "a

---

**1.** The surgical excision of the uterus and cervix. *See* MERRIAM WEBSTER MEDICAL DICTIONARY (1997) *available at* www.intelihealth.com.

**2.** The surgical excision of both fallopian tubes and ovaries. *See* MERRIAM WEBSTER MEDICAL DICTIONARY (1997) *available at* www.intelihealth.com.

large 10 to 12 centimeter cystic mass on the left posterior pelvic wall." (App. 191). Dr. Amechi opined that the cystic mass "could certainly account for [Robertson's] complaints of left lower quadrant pain." *Id.*

Robertson filed a complaint alleging medical malpractice by Drs. Bond and Richardson, specifically their "failure to locate and remove the left ovarian cyst." (App. 20). The Medical Review Panel opined that the evidence did not support the conclusion that either doctor "failed to comply with the appropriate standard of care." (App. 50). Drs. Bond and Richardson then filed motions for summary judgment and, in support thereof, designated Robertson's complaint and the opinion of the Medical Review Panel.

In response, Robertson designated the deposition of Dr. Bond and affidavits by Dr. Mattison, Dr. Amechi, and Robertson. In his deposition, Dr. Bond was asked "what the standard of care would have required [him] and Doctor Richardson to do" when they performed surgery upon Robertson if the mass mentioned in the May 28, 1996 ultrasound report was present in Robertson's pelvic area on July 11, 1996. (App. 140–41). Dr. Bond answered, "... if the mass was an appropriate one to remove, meaning that it had nothing to do with the colon or any other organ system but was gynecologic in nature, we would have removed it at the time." (App. 141). When asked whether there was "any explanation" for not removing the mass, "assuming that mass to be present on July 11, 1996," Dr. Bond answered, "None that I can think of." (App. 142). Dr. Mattison's affidavit averred that "as stated" in his report of the September 5, 1996 ultrasound, "it was [his] impression that there had been an enlargement of the solid mass within the pelvis compared to a previous study performed on May 28, 1996." (App.

184). He opined that upon further review, "it [was] still [his] impression that the solid mass noted in the May 28, 1996 study [was] the same solid mass noted in the September 5, 1996 study." (App. 185).

The trial court granted the doctors' motions for summary judgment. It concluded that after "closely review[ing] the contents of the materials designated and submitted" by Robertson, it found "no evidence therein suggesting" that either Dr. Bond or Dr. Richardson "failed to comply with the appropriate standard of care in treatment provided to" Robertson. (App. 13, 16).

### DECISION

When we review a trial court ruling on a motion for summary judgment, we apply the same standard of the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Indiana Univ. Med. Ctr., Riley Hosp. for Children v. Logan*, 728 N.E.2d 855, 858 (Ind.2000). "Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law." *Id.* All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.*

To prevail in her medical malpractice action, Robertson must prove that the defendants owed her a duty, and the defendants breached that duty which proximately caused an injury to Robertson. *See Slease v. Hughbanks*, 684 N.E.2d 496, 499 (Ind.Ct.App.1997). The physician has a duty to conform to the standard of care of a reasonably prudent physician in providing care to a patient. *Bowman v. Beghin*, 713 N.E.2d 913, 916 (Ind.Ct.App. 1999). More specifically, the physician is "required to possess and exercise that de-

gree of skill and care ordinarily possessed and exercised by a reasonably careful, skillful and prudent practitioner in the same class to which he belongs treating such maladies under the same or similar circumstances." *McIntosh v. Cummins,* 759 N.E.2d 1180, 1184 (Ind.Ct.App.2001), *trans. denied.* Care which falls below this standard of care establishes a breach of the physician's duty. *Bowman,* 713 N.E.2d at 916. When a medical review panel renders an opinion in favor of the physician, the plaintiff must come forward with expert medical testimony to rebut the panel's opinion. *McIntosh,* 759 N.E.2d at 1183. This expert testimony is generally required to establish the applicable standard of care. *Lusk v. Swanson,* 753 N.E.2d 748, 753 (Ind.Ct.App.2001), *trans. denied.* A medical malpractice case based upon negligence "is rarely an appropriate case for disposal by summary judgment, particularly when the critical question for resolution is whether the defendant exercised the requisite degree of care under the circumstances." *McIntosh,* 759 N.E.2d at 1183. "This issue is generally a question for the trier of fact, and not answerable as a matter of law." *Id.*

■ According to Robertson, her designated evidence, read in the light most favorable to Robertson, establishes the requisite standard of care for the doctors. She argues that the designated evidence creates a question of fact as to whether there was a breach of duty by the doctors. She asserts that Dr. Bond's testimony established the applicable standard of care: when performing surgery upon a woman suffering from pelvic pain and bleeding, if a cystic mass of significant size is present in the pelvic area, it should be removed; and Dr. Mattison's affidavit and his earlier report indicate that the mass was present

when the surgery was performed. We agree with Robertson.

As noted in FACTS, Dr. Bond was asked what the standard of care would have required them to do during the surgery if the mass identified in the earlier ultrasound was present in Robertson's pelvic area, and he answered that the mass should be removed. Further, according to Dr. Mattison, there was a mass observed on the left side of Robertson's pelvic area before surgery, and that mass remained present after the surgery. Therefore, we conclude that the evidentiary material submitted by Robertson did create a material question of fact as to whether the doctors breached the standard of care.

Dr. Richardson contends that pursuant to *Oelling v. Rao,* 593 N.E.2d 189 (Ind. 1992), Robertson's evidence is insufficient to create an issue of fact because it does not contain an expert's express statement that his care of Robertson violated the standard of care. He further asserts that no testimony addressed "the conduct of Dr. Richardson." Richardson's Br. at 11. In *Oelling,* the opposing affidavit stated "only that [the sworn expert] would have treated [the patient] differently, not that [the defendant doctor's] treatment fell below the applicable standard." 593 N.E.2d at 191. Here, Dr. Bond's testimony[3] was that the standard of care required the surgeon to remove the mass present in the pelvic area. Although he did not expressly state that it was a violation of the standard of care to not find and remove such a mass, it is undisputed that the doctors did not remove any mass from Robertson's left pelvic area. Further, the affidavit of Dr. Mattison supports the inference that the mass was present at the time of the surgery. Hence, we find this evidence suffices to create a material question of fact

---

3. There is no challenge to the qualifications of Dr. Bond as an expert. He states in his deposition that he is a physician who was trained in the specialty of gynecology. (App. 66, 67).

as to whether the doctors breached their duty. As to testimony about Dr. Richardson, in his deposition Dr. Bond described Dr. Richardson's position during the surgery as "closer to Ms. Robertson's left ovarian structure" than Bond. (App. 98). Dr. Bond also stated that Dr. Richardson assisted in removing Robertson's uterus and right ovary and examining her pelvic area "to determine if there were any other problems that needed to be addressed" (App. 96); and that Dr. Richardson "was able to input any" alternative suggestions as to the surgery undertaken. (App. 139). Thus, there is testimony as to the role of Dr. Richardson.

Dr. Bond argues that Robertson's evidence was insufficient to establish a material question of fact because there was neither "evidence that the mass was seen by [either doctor] during the course of the surgery" nor "any expert opinion that failing to discover the presence of the mass during the course of the surgery fell below the applicable standard of care." Bond's Br. at 8. Having found that the evidentiary material Robertson submitted in response to Bond's motion for summary judgment supports (1) the inference that a reasonably prudent physician would remove a cystic mass present in the patient's pelvic area, and (2) the inference that the mass was present, we find Bond's argument unavailing. Robertson's submission established material questions of fact as to whether the mass was indeed present and, if so, whether the doctors should have seen and removed it. Therefore, the trial court erred in granting the doctors' motions for summary judgment.

We reverse.

BROOK, C.J., and KIRSCH, J., concur.