**Stephen A. COX and Suzan M. Cox, Appellants–Plaintiffs,**

v.

**William E. PAUL, D.D.S., Appellee Defendant.**

No. 71A03–0303–CV–92.

Court of Appeals of Indiana.

April 7, 2004.

Edmond W. Foley, Douglas D. Small, Foley & Small, South Bend, IN, Attorneys for Appellants.

Elizabeth H. Knotts, Rori L. Goldman, Hill Fulwider, McDowell Funk & Matthews, Indianapolis, IN Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Suzan and Stephen Cox ("the Coxes") filed a complaint against Dr. William Paul ("Dr. Paul") in St. Joseph Circuit Court alleging that Dr. Paul breached his duty to warn Suzan that her dental implants were potentially defective and subject to recall. The Coxes filed a motion for partial summary judgment arguing that Dr. Paul breached his duty to warn as a matter of law. The trial court denied the motion. The Coxes have filed this interlocutory appeal and argue that the trial court erred when it denied their motion because the undisputed material facts establish that they are entitled to judgment as a matter of law. Concluding the undisputed material facts presented in this case establish that Dr. Paul breached his duty to warn, we reverse and remand for proceedings consistent with this opinion.

### Facts and Procedural History

In 1983, Suzan sought a consultation with Dr. Paul, an oral and maxillofacial surgeon, for temporomandibular joint problems. In 1984, Dr. Paul performed a surgical replacement of Suzan's right and left temporomandibular joints using Vitek dental implants. After the surgery, Suzan underwent a course of physical therapy and made an uneventful recovery. Suzan's last appointment with Dr. Paul was on June 18, 1984. In 1989, Suzan began to experience vertigo, neck pain, headaches, fatigue, and insomnia. The severity of these conditions escalated with each passing year; however, her family doctor could not determine the cause of those conditions.

In 1991, Dr. Paul received a letter from the FDA, which stated that the Vitek implants were potentially defective and subject to recall. Appellant's App. pp. 159–61. The letter recommended that physicians

contact their patients who had received Vitek implants and inform them of the risk of implant failure. As a result of this letter, in 1992, Dr. Paul ordered his staff to conduct a sweep of patient charts to determine which patients had received the Vitek implants and to notify those patients of the risk of implant failure. A second sweep of the files was conducted in 1994. Suzan was not identified as a Vitek implant recipient in either sweep of the patient files.

However, in 1996, Suzan was somehow identified as a Vitek implant recipient by Dr. Paul's office.[1] She was then notified about the Vitek implant recall. After a consultation, Dr. Paul recommended that Suzan have an MRI. The MRI revealed that Suzan's implants were extensively damaged and had disintegrated. On November 20, 1996, Suzan underwent surgery to remove the implant remnants. Dr. Paul admits that there is no evidence to explain why her file was not located during the 1992 and 1994 file sweeps.

The Coxes filed a complaint against Dr. Paul on January 29, 1998, alleging that Dr. Paul breached his duty to warn Suzan of the FDA recall of the Vitek implants. A proposed complaint was also submitted to a medical review panel through the Department of Insurance. On April 16, 2002, the medical review panel found that the evidence did not support the conclusion that Dr. Paul failed to meet the applicable standard of care as charged in the proposed complaint. Appellant's App. p. 235.

On November 18, 2002, the Coxes filed a motion for partial summary judgment arguing that "[t]he undisputed facts show that Dr. Paul totally failed to ever notify, or even identify, Suzan Cox for nearly five years after his duty to do so first existed.

Such failure is a breach of his duty as a matter of law." Appellant's App. p. 41. In response, Dr. Paul asserted that genuine issues of material fact precluded the entry of partial summary judgment on the issue of liability. Appellant's App. p. 328. After a hearing was held on the motion on January 30, 2003, the trial court denied the motion but certified its ruling for interlocutory appeal. Our court accepted jurisdiction of this appeal on March 31, 2003, and the Coxes filed their notice of appeal on April 3, 2003.

## Standard of Review

Our standard of review of a summary judgment motion is the same standard used in the trial court:

Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. The review of a summary judgment motion is limited to those materials designated to the trial court. We must carefully review decisions on summary judgment motions to ensure that the parties were not improperly denied their day in court.

*Tom–Wat, Inc. v. Fink*, 741 N.E.2d 343, 346 (Ind.2001) (citations omitted).

"The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law." *Ebersol v. Mishler*, 775 N.E.2d 373, 378 (Ind.Ct.App.2002), *trans. denied.* Therefore, "[a] party seeking summary judgment bears the burden of showing the absence of a factual issue and his entitle-

---

1. There was no "sweep" of the files conducted in 1996, and Dr. Paul could not explain how Suzan's file came to his attention.

ment to judgment as a matter of law." *Harco, Inc. of Indianapolis v. Plainfield Family Dining Assoc.*, 758 N.E.2d 931, 937 (Ind.Ct.App.2001) (citation omitted). All pleadings, affidavits, and testimony are construed liberally and in the light most favorable to the nonmoving party. *May v. Frauhiger*, 716 N.E.2d 591, 594 (Ind.Ct. App.1999).

For summary judgment purposes, a fact is "material" if it bears on ultimate resolution of relevant issues. *Yin v. Soc'y Nat'l Bank Ind.*, 665 N.E.2d 58, 64 (Ind.Ct.App. 1996), *trans. denied.* "[A]ny doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party." *Am. Mgmt., Inc. v. MIF Realty, L.P.*, 666 N.E.2d 424, 428 (Ind.Ct.App. 1996). "Even if it appears that the nonmoving party will not succeed at trial, summary judgment is inappropriate where material facts conflict or undisputed facts lead to conflicting inferences." *Link v. Breen*, 649 N.E.2d 126, 128 (Ind.Ct.App. 1995), *trans. denied.*

### Discussion and Decision

 Relying on our supreme court's decision in *Harris v. Raymond*, 715 N.E.2d 388 (Ind.1999), *reh'g denied,* the Coxes argue that the undisputed material facts establish that Dr. Paul breached his duty to warn as a matter of law. Also relying on *Harris*, Dr. Paul contends that whether he engaged in "reasonable efforts" to identify those patients who should have been provided information about the Vitek implant recall is a fact question that must be resolved by a jury.

In *Harris*, Raymond, the implant recipient, suffered from temporomandibular joint dysfunction, and Dr. Harris inserted Vitek implants into her jaw in an effort to correct the dysfunction. *Id.* at 390. After surgery, Raymond sought further consultation with Dr. Harris regarding her im-

plants and continued pain. *Id.* In 1991, Raymond moved to Arizona. She sent her new address to Dr. Harris and requested that he forward copies of her medical records to her, which he did. She also attempted to contact Dr. Harris in 1993 by telephone call. *Id.* In 1991, Dr. Harris received notice of the Vitek implant recall from the FDA. He attempted to contact all patients who had received the implants, but Raymond was not notified. *Id.* at 391. In 1993, Raymond had a CAT scan after she began bleeding from the ear. The CAT scan revealed that her dental implants had shattered. *Id.*

Raymond filed a complaint against Dr. Harris alleging, in part, that he failed to warn her that the implants were defective. *Id.* Dr. Harris then filed a motion for summary judgment alleging that Raymond's claims were barred by the statute of limitations. *Id.* After the trial court denied the motion, our court affirmed. *Id.* On transfer, our supreme court addressed "two preliminary issues" that were not raised by the parties on appeal. *Id.* at 392. One of those issues was the "validity of [Raymond's] third claim of negligence, that is, defendant's breach of his duty to warn [Raymond] of the safety issues related to her dental implants." *Id.*

In resolving that issue, the court initially observed that generally, the question of whether a duty exists on the part of a defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law. *Id.* at 393. However, "[t]he question of what standard of care applies in a specific context, and the related question of whether the defendant has breached his duty to adhere to that particular standard, are often questions of fact." *Id.* The court then stated:

> In medical malpractice cases, for example, we have held that the general standard of care that a health care provider

must exercise is "that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class to which he belongs, acting under the same or similar circumstances." To establish the particular standard of care in a malpractice case and the breach of the duty to adhere to that particular standard, however, a plaintiff must often present expert testimony to the trier of fact about what other reasonable doctors similarly situated would have done under the circumstances. This is so because of the often highly technical and complicated nature of medical treatment. Nevertheless, not all medical malpractice cases are so technical that they require expert testimony, and when no reasonable jury could reach any conclusion other than that a specific standard of care is applicable and was breached, the questions of what specific standard is applicable and whether that standard was breached are questions of law for the court.

*Id.* at 393–94 (internal citations omitted).

The court then addressed breach of duty to warn and observed that "it is essential that the health care provider disclose material facts to the patient at appropriate times during the course of the patient's treatment so that the patient may make informed decisions about health care issues." *Id.* at 394.

> There is nothing about the nature of the relationship that would warrant any conclusion other than that the physician or oral surgeon has a duty to warn his patients about manufacturer and FDA safety alerts that pertain to medical devices the physician or oral surgeon previously inserted or implanted in his patients.

*Id.* Further, the court noted that the physician is in a "good position" to maintain patient records so that patients may be contacted if "significant new information" addressing the safety of the implanted medical devices becomes available. *Id.* at 395. "Any countervailing interest in guarding against imposing potentially burdensome requirements for finding patients who may have relocated can be addressed by qualifying the duty so that the physician or oral surgeon need only take reasonable steps to update patient information and to locate patients whose address of record changes." *Id.*

The court also determined that the duty to warn extends to both current and former patients and "a safety alert issued by the manufacturer or FDA triggers the need to make reasonable efforts to contact all current and former patients with the implants." *Id.* The court therefore concluded that *"as a matter of law,* defendant had a duty to warn both current and former patients, including plaintiff, of safety issues highlighted by the manufacturer and/or the FDA, and that, *based on the undisputed facts, defendant has breached that duty here." Id.* at 394 (emphasis added). However, the court also stated:

> Defendant does not dispute that the FDA issued a safety alert in 1990, that defendant had access to plaintiff's new Arizona address and in fact forwarded her dental record to her at her request, and that he nonetheless failed to notify her of the safety issues relating to the dental implant he had previously inserted in 1988. *Whether this constitutes a breach of the duty to warn can, on remand, be the subject of further motions for summary judgment or a trial on the merits.*

*Id.* at 395 (emphasis added).

Dr. Paul asserts that the conclusions reached by our supreme court in *Harris* are inconsistent and relies on the emphasized language to support his argument that whether he breached his duty to warn

is a fact question that must be resolved by a jury. We disagree.

Our supreme court clearly determined that based on the undisputed facts of the case, Dr. Harris breached his duty to warn. *Id.* at 394. However, because the court raised the issue sua sponte, it was required to remand the case for either further motions for summary judgment or a trial on the merits.[2] *See id.* at 395. Consequently, the language relied on by Dr. Paul is not inconsistent with our supreme court's conclusion that Dr. Harris breached his duty to warn as a matter of law.

The facts of this case are nearly identical to those presented in *Harris.* In 1984, Dr. Paul performed a surgical replacement of Suzan's right and left temporomandibular joints using Vitek dental implants. In 1991, Dr. Paul received a letter from the FDA, which stated that the Vitek implants were potentially defective and subject to recall. After receiving the letter, in 1992 and 1994, Dr. Paul ordered his staff to conduct a sweep of patient charts to determine which patients had received the Vitek implants and to notify those patients of the risk of implant failure. Suzan was not identified as a Vitek implant recipient in either sweep of the patient files and was not notified of the recall until 1996. Dr. Paul admits that there is no evidence to explain why her file was not located during the 1992 and 1994 file sweeps.

The dissent contends that the facts presented in this case are distinguishable from those in *Harris* because in *Harris* the physician did not notify the patient of the recall despite continued contact between them. In this case, although there was no continued contact between Suzan and Dr. Paul, it is undisputed that Dr.

Paul made no attempt to notify Suzan of the recall until 1996. We can therefore agree with the dissent, that under *Harris,* whether a physician breached his duty to use reasonable efforts to warn his or her current and former patients is generally a fact question to be determined by the fact-finder. However, in this case, it is undisputed that Dr. Paul made no attempt to contact Suzan; therefore whether he used reasonable efforts to warn Suzan about the recall can and should be resolved as a matter of law. Accordingly, we conclude that the undisputed material facts establish that Dr. Paul had a duty to warn Suzan of the Vitek implant recall in a timely fashion, and that he breached that duty as a matter of law when he made no attempt to warn her. Therefore, the trial court erred when it denied the Coxes' motion for partial summary judgment.

Reversed and remanded for proceedings consistent with this opinion.

VAIDIK, J., concurs.

SHARPNACK, J., dissents with opinion.

SHARPNACK, J. dissenting.

I respectfully dissent from the majority's holding that the trial court's denial of the Coxes' motion for summary judgment was erroneous. The majority's holding is based upon our supreme court's decision in *Harris v. Raymond,* 715 N.E.2d 388 (Ind. 1999), *reh'g denied.* However, I interpret *Harris* differently than the majority and conclude that the trial court properly denied the Coxes' motion for summary judgment.

*Harris* also dealt with the failure of an oral and maxillofacial surgeon to warn a patient of the Vitek implant recall. *Id.* at

2. On remand, Raymond filed a motion for partial summary judgment alleging that, as a matter of law, Dr. Harris violated the stan-

dard of care regarding his duty to warn, and the trial court granted the motion. Appellant's App. pp. 282–85; 308–09

390. There, the surgeon inserted the implants into Raymond's jaw in 1986. *Id.* In December 1990, the FDA issued a safety alert regarding the implants and, soon thereafter, issued a recall order. *Id.* In 1991, Raymond moved to Arizona, but provided the surgeon with her new address and requested copies of her medical records. *Id.* The surgeon forwarded the medical records to her in Arizona. *Id.* In late 1991, the surgeon compiled a list of patients with the implants and attempted to notify them regarding the recall. *Id.* at 391. However, Raymond's name was not included on the list of patients. *Id.* Raymond called the surgeon in July 1992 and April 1993, and the April call was noted in her chart. *Id.* at 390. Despite these telephone calls, the surgeon did not notify Raymond of the recall. *Id.* at 391.

On appeal, our supreme court addressed an issue not raised by the parties, specifically, the surgeon's duty to warn his former and current patients of the implant recall. *Id.* at 392. It is clear that our supreme court found a duty to warn current and former patients of the safety alert. However, the extent of this duty and whether the surgeon breached the duty are less clear.

In concluding that the surgeon had a duty to warn current and former patients, our supreme court first qualified the duty by holding that "[a]ny countervailing interest in guarding against imposing potentially burdensome requirements for finding patients who may have relocated can be addressed by qualifying the duty so that the physician or oral surgeon need only *take reasonable steps to update patient information and to locate patients whose address of record changes.*" *Id.* at 395 (emphasis added). However, our supreme

court then held that "[w]hile we need not decide today the precise limits of the duty to warn, at the very least, a safety alert issued by the manufacturer or the FDA triggers the need to *make reasonable efforts to contact all current and former patients* with the implants." *Id.* (emphasis added).

Further, in addressing whether the surgeon had breached his duty to warn Raymond, our supreme court held as follows:

We conclude that, as a matter of law, defendant had a duty to warn both current and former patients, including plaintiff, of safety issues highlighted by the manufacturer and/or the FDA, and that, *based on the undisputed facts, defendant has breached that duty here.*

*Id.* at 394 (emphasis added). However, our supreme court ultimately concluded the following:

Defendant does not dispute that the FDA issued a safety alert in 1990, that defendant had access to plaintiff's new Arizona address and in fact forwarded her dental record to her at her request, and that he nonetheless failed to notify her of the safety issues relating to the dental implant he had previously inserted in 1988. *Whether this constitutes a breach of the duty to warn can, on remand, be the subject of further motions for summary judgment or a trial on the merits.*

*Id.* at 395 (emphasis added).[3]

It seems to me that there are two ways to read *Harris* on the issue of duty and breach of duty. It is clear that *Harris* holds that there is a duty to warn current and former patients of the safety concerns raised by the FDA and the manufacturer. The first way to read *Harris* is that the

---

**3.** On remand, Raymond filed a motion for partial summary judgment alleging that the surgeon breached his duty to warn based upon the supreme court's opinion, and the trial court granted the motion.

failure to warn is a breach of that duty without regard to the reasonableness of the efforts, if any, made to discharge the duty. This reading would make the duty absolute and the liability strict. The second way to read *Harris* is that the duty to warn is discharged if reasonable efforts, under the circumstances, are made to locate and warn current and former patients.

If you read *Harris* the second way, you then have two ways to understand what the court wrote about Harris's conduct. One way is to conclude that the court found that what Harris did was, as a matter of law, a failure to make reasonable efforts to warn. The other way to understand what the court wrote about Harris's conduct is to conclude that the court remanded to the trial court for it to determine, through trial or summary judgment, whether what Harris did was a reasonable effort to warn.

The majority resolves this conflict by concluding that our supreme court "clearly determined that based on the undisputed facts of the case, Dr. Harris breached his duty to warn. However, because the court raised the issue sua sponte, it was required to remand the case for either further motions for summary judgment or a trial on the merits." Maj. Opinion at 906. Based upon *Harris*, the majority concludes that Dr. Paul had a duty to warn Suzan Cox and breached that duty as a matter of law. The majority essentially concludes that Dr. Paul had an absolute duty to warn Cox rather than a duty to use reasonable efforts to warn her. I disagree and conclude that Dr. Paul had a duty to use reasonable efforts to warn Cox and whether he used such reasonable efforts is an issue not appropriate for summary judgment.

In interpreting *Harris*, the general principles of our medical malpractice law and summary judgment procedures must be kept in mind. In general, in a medical malpractice case, the plaintiff must show: (1) a duty owed to plaintiff by defendant, (2) breach of that duty by allowing conduct to fall below the applicable standard of care, and (3) compensable injury proximately caused by defendant's breach of duty. *Bader v. Johnson*, 732 N.E.2d 1212, 1216–1217 (Ind.2000). The standard of care that a physician must exercise is "that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class to which he belongs, acting under the same or similar circumstances." *Weinberg v. Geary*, 686 N.E.2d 1298, 1301 (Ind.Ct.App. 1997), *reh'g denied, trans. denied.* Thus, generally, a physician is held to a standard of care of reasonableness. An interpretation of *Harris* that includes an absolute duty to warn is inconsistent with our general medical malpractice laws. However, an interpretation of the duty as a duty to use reasonable efforts to warn patients is more consistent with such laws.

If Dr. Paul is held to a duty to use reasonable efforts to warn his patients, summary judgment for the Coxes is inappropriate. Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Stryczek v. Methodist Hospitals, Inc.*, 656 N.E.2d 553, 554 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* We must liberally construe all designated evidentiary matter in favor of the nonmoving party and resolve any doubt against the moving party. *Id.* Even if it appears that the nonmoving party will not succeed at trial, summary judgment is inappropriate where material facts conflict or undisputed facts lead to conflicting inferences. *Id.; see also Payne v. Marion General Hosp.*, 549 N.E.2d 1043, 1046 (Ind.Ct.App.1990) (A

court's "belief that the nonmovant will be unsuccessful at trial is not grounds for summary judgment."), *reh'g denied, trans. denied.* A medical malpractice case based upon negligence "is rarely an appropriate case for disposal by summary judgment, particularly when the critical question for resolution is whether the defendant exercised the requisite degree of care under the circumstances." *Robertson v. Bond,* 779 N.E.2d 1245, 1249 (Ind.Ct.App.2002), *trans. denied.* Rather, "[t]his issue is generally a question for the trier of fact, and not answerable as a matter of law." *Id.*

Here, the facts are undisputed. Dr. Paul inserted the implants into Cox's jaw in 1984. Her last appointment with Dr. Paul was in June 1984. In 1991, Dr. Paul was notified by the FDA that the implants were being recalled. In 1992, he ordered his staff to conduct a review of his patient charts to determine which patients had received the implants. Patients identified during the review as having the implants were mailed a packet of information regarding the recall. In 1994, Dr. Paul ordered that another review of patient charts be performed "to determine if there were Vitek patients who had not been identified earlier." Appellant's Appendix at 379. Cox was not identified in either review of the patient charts. In 1996, it came to Dr. Paul's attention that Cox has received the implants but had not been notified of the recall. At that time, Dr. Paul's office staff contacted Cox.

Although the facts are undisputed, such facts lead to conflicting inferences. It is for the jury to determine whether Dr. Paul's efforts to warn Cox were reasonable. Consequently, I conclude that summary judgment is inappropriate. *See, e.g., Natural Gas Odorizing, Inc. v. Downs,* 685 N.E.2d 155, 161 (Ind.Ct.App.1997) (holding in a products liability case that whether a duty to warn exists is a question of law

and the adequacy of the warning is a question of fact for the jury), *reh'g denied, trans. denied.*

Even if you read *Harris* to mean that the supreme court found the facts of *Harris* to equal a breach as a matter of law, the question here then is whether those facts are the same as our facts. They are not. In *Harris,* despite continued contact between the patient and physician even after the recall was issued, the physician did not notify the patient of the recall. Here, there was no contact between Suzan and Dr. Paul from 1984 until Dr. Paul notified her of the recall in 1996. Consequently, I do not believe that Harris mandates a grant of summary judgment for the Coxes.

In summary, I would affirm the trial court's denial of the Coxes' motion for summary judgment.