James Michael LOVINGS and Della Lovings, Appellants–Plaintiffs,

v.

Dave THOMAS, Appellee–Defendant.

Dave Thomas, Appellant/Counter–Plaintiff,

v.

James Michael Lovings and Della Lovings, Appellees/Counter–Defendants.

No. 64A03–0307–CV–261.

Court of Appeals of Indiana.

March 26, 2004.

**444**

Gordon A. Etzler, Kevin G. Kerr, Valparaiso, IN, Attorneys for Appellants.

Paul T. Berkowitz, Chicago, IL, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

James Michael Lovings ("Michael") and Della Lovings (collectively, the "Lovings") appeal the trial court's grant of summary judgment to Dave Thomas on the Lovings' complaint. The Lovings raise two issues, which we restate as:

I. Whether the trial court erred by granting summary judgment on the Lovings' invasion of privacy claim; and

II. Whether the trial court erred by granting summary judgment on the Lovings' defamation claim.

We affirm.

The relevant facts designated by the parties follow.[1] The Lovings are the owners of Lovings Heating and Cooling, Inc. ("Company"). Thomas is a business agent employee of the Sheet Metal Workers Local 20 ("Union"). In 2000, the Union was involved in an organizational campaign at the Company, and the Union filed an unfair labor practice charge against the Company with the National Labor Relations Board. In January 2001, while the unfair labor practice charge was pending, the Lovings attended a convention of the Illinois/Indiana Construction Advancement Foundation at the Porter County Exposition Center. Thomas was working at the Union's booth during the convention. According to Thomas, Michael started walking in front of the booth and "picketing." Appellant's Appendix at 86. Michael denied that he was "picketing" the Union's booth. Thomas told Michael "[s]omething to the effect of you mother fuckers and you can go fuck yourself." *Id.* at 216. Michael replied, "and your mother too." *Id.* at 217. Thomas then told Andrea Selles, who was managing and overseeing the convention, "There is somebody in a Lovings Sheet Metal jacket, and he is causing a problem up by our booth, and I would like him removed." *Id.* at 88.

Selles saw Michael walking back and forth in front of the Union's booth. Selles consulted with Jim Arendas, the convention's safety director, who advised her to discuss the situation with Dewey Pearman, the executive director. Pearman advised Selles to have security escort Michael out of the building. Over the intercom, Selles summoned security to the front gate. Selles told the security officer to ask Michael to leave the convention. The security officer tapped Michael on the shoulder and, in a calm, "normal speaking voice," asked him to leave. *Id.* at 243. As the officer walked the Lovings out of the building, Thomas said, "I guess you are not welcome here." *Id.* at 227. Michael responded, "I guess the feeling is mutual." *Id.* at 228. Three of Michael's business associates later asked him about the incident.

The Lovings filed a complaint against Thomas alleging invasion of privacy and

---

1. We direct Thomas's attention to Ind. Appellate Rule 46(A)(6)(c) which provides that the statement of the facts "shall be in narrative form and shall not be a witness by witness summary of the testimony."

defamation, and Thomas filed a counterclaim against the Lovings alleging abuse of process. Thomas filed a motion for summary judgment on the Lovings' claims, and the Lovings filed a motion for summary judgment on Thomas's counterclaim. The trial court granted both motions as follows:

On March 12, 2003 the parties appeared by their respective counsel for hearing on pending motions. [Thomas's] Motions to Strike various pleadings were all denied. Hearing was held on [the Lovings'] Motion for Summary Judgment regarding [Thomas's] Counter–Claim and [Thomas's] Motion for Summary Judgment regarding [the Lovings'] complaint. The Court took the motions under advisement in order to review the material and applicable case law.

Having reviewed the designated material and applicable case law and having heard the lengthy arguments of counsel, the Court agrees with several statements made by [Thomas's] counsel during the hearing on March 12, 2003. First, "What we have here is a bunch of speculation." That is certainly accurate and applies both to [the Lovings'] complaint and [Thomas's] Counter Claim. [Thomas's] counsel later said[,] "This is much ado about nothing." That is correct again and applies equally to both sides. Later on [Thomas's] counsel stated that it was a " . . . travesty that we are all here." Once again, the Court agrees with that as it relates to all matters pending in this cause.

On [the Lovings'] Motion for Summary Judgment regarding all counts of [Thomas's] Counter Claim, the Court finds that there is no genuine issue of material fact and that [the Lovings are] entitled to judgment as a matter of law. On [Thomas's] Motion for Summary Judgment regarding all counts of [the Lovings'] complaint, the Court finds that there is no genuine issue of material fact and that [Thomas] is entitled to judgment as a matter of law.

The Court finds that there is no just cause for delay and orders judgment entered in favor of [the Lovings] and against [Thomas] on [Thomas's] Counter–Claim and orders judgment entered in favor of [Thomas] and against [the Lovings] on [their] complaint.

*Id.* at 442. The Lovings appeal the trial court's grant of summary judgment on their complaint against Thomas. Thomas does not appeal the grant of summary judgment on his counter-claim against the Lovings.

Our standard of review for the grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* Review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court. *Id.* at 974.

## I.

■■■ The first issue is whether the trial court erred by granting summary judgment on the Lovings' invasion of privacy claim. Our supreme court has held that the term "invasion of privacy" is a label used to describe "four distinct injuries: (1) intrusion upon seclusion, (2) ap-

propriation of [name or] likeness, (3) public disclosure of private facts, and (4) false-light publicity." *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 593 (Ind.2001). This tort is similar to defamation but reaches different interests. *Near East Side Cmty. Org. v. Hair*, 555 N.E.2d 1324, 1335 (Ind.Ct.App.1990). Defamation reaches injury to reputation, while privacy actions involve injuries to emotions and mental suffering. *Id.*

The Lovings' claim relates to false light publicity. In *Near East Side Community Organization*, we described this form of invasion of privacy as "publicity that unreasonably places the other in a false light before the public." 555 N.E.2d at 1335. We have also looked to the Restatement for a definition of false light publicity:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Branham v. Celadon Trucking Serv., Inc.*, 744 N.E.2d 514, 524 (Ind.Ct.App.2001) (quoting the Restatement (Second) of Torts § 652E (1977)), *trans. denied.* The Restatement also provides that "publicity" occurs when:

the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.

Restatement (Second) of Torts § 652E, Comment a (referring to the definition of "publicity" in Restatement (Second) of Torts § 652D, Comment a).

The Lovings assert that Thomas placed them in a false light by having a police officer summoned over the intercom system and having them "expelled from a public place by a police officer." Appellant's Brief at 9. Thomas argues that the trial court properly granted summary judgment on this claim because the Lovings failed to demonstrate the publicity requirement of the tort. Thomas also argues that he did not have the Lovings removed from the convention; rather, Pearman made the decision to have them removed.

The designated evidence indicates that Selles and Pearman were responsible for summoning the security officer and having the Lovings escorted out of the convention, not Thomas. Thomas told Selles, "There is somebody in a Lovings Sheet Metal jacket, and he is causing a problem up by our booth, and I would like him removed." *Id.* at 88. Thomas's comment was not communicated to the public at large or even to a substantial number of people. Further, there was no evidence designated that Selles was under Thomas's control. Rather, the designated evidence demonstrated that after receiving Thomas's complaint, Selles saw Michael walking back and forth in front of the Union's booth, received complaints from other convention customers, and received authorization from her supervisor to have Michael removed. Selles summoned a security officer and told the officer to remove Michael. Consequently, the designated evidence demonstrated that Thomas did not give publicity

to a matter concerning the Lovings that placed the Lovings before the public in a false light. The trial court did not err by granting summary judgment to Thomas on this claim. *See, e.g., Branham,* 744 N.E.2d at 525 (holding that the trial court properly granted summary judgment to the defendant on the plaintiff's false light publicity claim).

## II.

The next issue is whether the trial court erred by granting summary judgment on the Lovings' defamation claim. Defamation is "that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Ratcliff v. Barnes,* 750 N.E.2d 433, 436 (Ind.Ct.App. 2001), *reh'g denied, trans. denied.* To establish defamation, a plaintiff must prove the following elements: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. *Id.* The determination of whether a communication is defamatory is generally a question of law for the court. *Id.* The determination becomes a question of fact for the jury if the communication is reasonably susceptible of either defamatory or non-defamatory interpretation. *Id.*

A communication is defamatory per se if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct. *Id.* Damages are presumed even without proof of actual harm to the plaintiff's reputation if the communication is defamatory per se. *Poyser v. Peerless,* 775 N.E.2d 1101, 1106 (Ind.Ct.App.2002).

### A.

The Lovings first argue that Thomas's comments to Michael, "[s]ome-thing to the effect of you mother fuckers and you can go fuck yourself," were defamatory per se. Appellant's Appendix at 216. The Lovings contend that these comments impute criminal or sexual misconduct, including incest. We disagree. The term "mother fucker" is defined as: "n. Vulgar Slang 1. A person regarded as thoroughly despicable. 2. Something regarded as thoroughly unpleasant, frustrating, or despicable." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed.2000), *available at http://dictionary.reference.com/.* This term does not impute criminal or sexual misconduct. Rather, the term imputes that the person is "thoroughly despicable." *Id.* We observed in *Rambo v. Cohen,* 587 N.E.2d 140 (Ind.Ct.App.1992), *reh'g denied, trans. denied,* that such comments are not defamatory per se.

It is well-settled throughout this country that obnoxious remarks, even remarks much more obnoxious than those Cohn is alleged to have made here, are not defamatory per se, and will not lead to liability without proof of special damages. *See, e.g., Raible v. Newsweek, Inc.* (W.D.Pa.1972), 341 F.Supp. 804, 807 ("to call a person a bigot or other appropriate name descriptive of his political, racial, religious, economic or sociological philosophies gives no rise to an action for libel"); *Ceravolo [v. Brown,* 364 So.2d 1155 (Ala.1978) ] ("dead beat" and "crook"); *Moriarty v. Lippe* (1972), 162 Conn. 371, 294 A.2d 326 (defendant called plaintiff police officer a "clown," "big fat ape," "smart aleck," "big fat oaf," and a "stupid son of a bitch"); *McGuire v. Jankiewicz* (1972), 8 Ill. App.3d 319, 290 N.E.2d 675 (defendant insurance agent told plaintiff attorney's client that plaintiff was an asshole); *Gomez [v. Hug,* 7 Kan.App.2d 603, 645 P.2d 916 (1982) ] ("fucking Mexican greaser"

and "fucking spic"); *Bradshaw* [*v. Swagerty*, 1 Kan.App.2d 213, 563 P.2d 511 (1977) ] ("nigger" and "bastard"); *Sampson* [*v. Rumsey*, 1 Kan.App.2d 191, 563 P.2d 506 (1977) ] ("son of a bitch"); *Ferlito v. Cecola* (1982), La.App., 419 So.2d 102, 105, writ denied, 422 So.2d 157 ("[p]rofane language, although disgusting and uncouth, is not defamatory per se."); *Harris v. Levy* (1977), La. App., 353 So.2d 1065 ("son of a bitch"); *Hansen v. Dethridge* (1946), N.Y. City Ct., 67 N.Y.S.2d 168; *Ledsinger v. Burmeister* (1982), 114 Mich.App. 12, 318 N.W.2d 558 ("nigger"); *Milner Hotels v. Dougherty* (1943), 195 Miss. 718, 15 So.2d 358 ("God damn son of a bitch" and "damn liar"); *Meier v. Novak*, 338 N.W.2d 631 (N.D.1983) ("asshole"); *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369 [6 OBR 421], 453 N.E.2d 666 ("Little Hitler"); *Rybas* [*v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108 (1983) ] (tenant's attorney wrote letter to landlord's attorney, calling landlord anti-Semitic). In light of these cases, we hold Cohn's use of the relatively mild phrase "horse's butt" was merely obnoxious language which the law tolerates as an expression of free speech in a free society.

*Id.* at 147–148 (footnote omitted); *see also Northern Ind. Pub. Serv. Co. v. Dabagia*, 721 N.E.2d 294, 303 (Ind.Ct.App.1999) (holding that "[w]hile racial slurs and epithets are contemptible and do not belong in a civil society, they are generally not defamatory in the absence of particular circumstances that make them so"), *reh'g denied, trans. denied.*

■■■■ Because the Lovings' defamation action does not qualify as defamation per se, the Lovings can "recover for emotional and physical harm only upon a showing of special damages." *Rambo*, 587 N.E.2d at 146. "Emotional and physical harms are not special damages unto themselves, but rather are parasitic damages, viable only when attached to normal (i.e., pecuniary) special damages." *Id.* "The parasitic damages ride along with special damages; if special damages are alleged and proved, recovery for parasitic damages is possible; if special damages are not alleged and proved, there can be no recovery for the parasitic damages." *Id.* "Special damages are not assumed to be necessary or inevitable but must be shown by allegation and specific proof to have been actually incurred as a natural and proximate consequence of the wrongful act." *Levee v. Beeching*, 729 N.E.2d 215, 223 (Ind.Ct.App.2000).

Here, the Lovings have failed to allege or show the existence of a genuine issue of material fact concerning special damages. The trial court properly entered summary judgment in favor of Thomas on this claim. *See, e.g., Rambo*, 587 N.E.2d at 149 (holding that trial court properly entered summary judgment where the defendant's comments were not defamatory per se and the plaintiff failed to allege or show the existence of a genuine issue of material fact concerning the pecuniary special damages).

**B.**

■■■ The Lovings also argue that Thomas's conduct in having the officer remove them from the convention was defamatory per se. Thomas told Selles, who was managing and overseeing the convention, "There is somebody in a Lovings Sheet Metal jacket, and he is causing a problem up by our booth, and I would like him removed." Appellant's Appendix at 88. The Lovings argue that this comment was defamatory per se because it imputed criminal conduct to the Lovings. Specifically, the Lovings contend that the comment imputed the offense of "disorderly conduct."

■ "A false imputation of criminal activity ... must bear some reasonably close relation to the legislative definition of a crime." *Cochran v. Indianapolis Newspapers, Inc.*, 175 Ind.App. 548, 552, 372 N.E.2d 1211, 1216 (Ind.Ct.App.1978). However, if "the words used are such as to produce upon the minds of those who hear them an impression that the plaintiff was guilty of a crime, then they are actionable, although they may not fully describe an offense." *Street v. Shoe Carnival, Inc.*, 660 N.E.2d 1054, 1059 (Ind.Ct.App.1996).

Ind.Code § 35–45–1–3 provides that "[a] person who recklessly, knowingly, or intentionally: (1) engages in fighting or in tumultuous conduct;[2] (2) makes unreasonable noise and continues to do so after being asked to stop; or (3) disrupts a lawful assembly of persons; commits disorderly conduct, a Class B misdemeanor." Thomas said that Michael was "causing a problem." Appellant's Appendix at 88. Thomas's comment does not bear a reasonably close relationship to the legislative definition of the crime of disorderly conduct. The statement does not imply that Michael was fighting or engaging in tumultuous conduct, making unreasonable noise, or disrupting a lawful assembly of persons. We fail to see how Thomas's comment gives the impression that Michael was committing the criminal offense of disorderly conduct.[3] *Cf. Street*, 660 N.E.2d at 1058–1059 (holding that the defendant imputed the crime of theft to the plaintiff where an employee of the defendant twisted the plaintiff's arm behind her back and pinned her down on the cash register counter, yelled, "resisting arrest call 911 hurry. Resisting arrest," and led the plaintiff to the office in front of other customers). Consequently, Thomas's comments were not defamatory per se. *See, e.g., Rambo*, 587 N.E.2d at 147–148. As in Part II(A) above, the Lovings were required to allege or show the existence of a genuine issue of material fact concerning the pecuniary special damages, which they failed to do. *See, e.g., id.* at 146. The trial court properly entered summary judgment in favor of Thomas on this claim. *See, e.g., id.* at 149.

For the foregoing reasons, we affirm the trial court's grant of summary judgment to Thomas on the Lovings' complaint.

Affirmed.

MATHIAS, J. and VAIDIK, J. concur.

**2.** Ind.Code § 35–45–1–1 defines "tumultuous conduct" as "conduct that results in, or is likely to result in, serious bodily injury to a person or substantial damage to property."

**3.** The Lovings rely upon *Starobin v. Northridge Lakes Dev. Co.*, 94 Wis.2d 1, 287 N.W.2d 747 (1980). There, the Wisconsin Supreme Court held that a trial court had erroneously granted a motion to dismiss where the plaintiff alleged that the defendants repeatedly had the plaintiff removed from a club by police officers by stating that the plaintiff was not a member of the club, was not entitled to use the clubhouse facilities, was creating a disturbance, and had previously created a disturbance. *Id.* at 750. The Wisconsin Supreme Court held that the allegations were capable of defamatory meaning and imputed the crime of disorderly conduct. *Id.* at 752. However, Wisconsin defined disorderly conduct as "[i]n a public or private place, engage[ing] in violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance." *Id.* at 752 n. 4. The Wisconsin Supreme Court held that the defendants' allegations fit within Wisconsin's definition of disorderly conduct. Here, our statute defines disorderly conduct much differently, and Thomas's comments did not impute such a crime.