Beverly R. NEWMAN, Appellant–
Plaintiff,

v.

JEWISH COMMUNITY CENTER
ASSN. OF INDIANAPOLIS, Inc.,
et al., Appellees–Defendants.

No. 30A01–0703–CV–129.

Court of Appeals of Indiana.

Oct. 31, 2007.

Lawrence T. Newman, Lawrence Law Firm, Indianapolis, IN, Attorney for Appellant.

James W. Roehrdanz, Eric D. Johnson, Nicholas W. Levi, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Chief Judge.

Beverly Newman and her daughter, Julie Sondhelm, have an extremely volatile relationship, as detailed in our memorandum decision dismissing Newman's appeal from the trial court's denial of her petition for grandparent visitation with Sondhelm's children, M.S. and K.S. *In re Visitation of M.S. & K.S.*, No. 29A05–0606–CV–322, slip op. at 1–2, 860 N.E.2d 928 (Ind.Ct.App. Jan. 24, 2007). While the harmful effects of Newman and Sondhelm's relationship were initially confined to the immediate family, Newman has chosen to involve third parties by filing suit against numerous defendants, including appellees-defendants Jewish Community Center Association of Indianapolis, Inc. (the JCC), Nancy Riddle–Mills, Bev Brown, and Beth Grimm (collectively, the appellees). Newman's latest complaint alleges claims for defamation and invasion of privacy by false light and intrusion.

Newman appeals from the trial court's grant of summary judgment in favor of the appellees. Specifically, Newman argues that (1) the trial court erred by dismissing various defendants; (2) the trial court erred by dismissing Newman's claim for invasion of privacy by intrusion; (3) the trial court abused its discretion during discovery; and (4) the trial court erred by granting summary judgment in favor of the appellees. Finding no error, we affirm the judgment of the trial court.

### FACTS

Sondhelm began working as a social worker at the JCC in August 1999. At that time, Newman was also a volunteer at the JCC and assisted with the Early Childhood Education Class (ECE class) in which M.S. and K.S. were students. In August 2002, Sondhelm terminated all social contact between Newman and M.S. and K.S. because Sondhelm believed that Newman was undermining her relationship with the children. Appellant's App. p. 218. While Newman no longer had social contact with her grandchildren, she continued to have contact with them through the ECE class.

Two months after Sondhelm terminated Newman's social contact with the children, two JCC employees, Brown and Grimm, approached Sondhelm about Newman's conduct in their ECE class. Brown and Grimm told Sondhelm that Newman had become "increasingly insistent on being in the classroom," "demanding," and "very argumentative." *Id.* at 222. Grimm told Sondhelm that during the last ECE class field trip, "she had a difficult time handling [Newman and that] ... she didn't want [Newman] to come on field trips anymore because it was more work having [her] there." *Id.*

As a result of these conversations, Sondhelm filed a written request with the JCC requesting that Newman be prohibited from volunteering in JCC activities involving M.S. and K.S. Ira Jaffee, the Executive Director of the JCC, wrote a letter to Newman on October 31, 2002, informing her that because of Sondhelm's request, "future visits in the classrooms of [M.S. and K.S.] or participation in their school activities must be pre-arranged and approved by [Sondhelm]." *Id.* at 285.

M.S. also participated in the JCC's aftercare program. On December 4, 2003, Newman contacted Jaffee about an incident she witnessed in the aftercare wing, alleging that a young JCC employee engaged in contact with a child in the employee's care that may have constituted sexual or physical abuse. Newman informed Jaffee that

I saw a large young male with brown hair and a round, rosy face pinning down the person who was moaning. They were on the floor next to the wall. I stood there until the large male noticed me watching him and stopped his use of force. I could not tell if the

extreme physical contact was sexual or hostile, but it was totally inappropriate and potentially involved liability to the JCC.... As an educator and grandparent of two children attending the JCC, I feel it is imperative that the large male be removed from the JCC....

*Id.* at 66. The JCC conducted an investigation and concluded that the behavior was "voluntary wrestling" and "playful behavior." *Id.* at 522. Based on this conclusion, the JCC did not discipline the employee.

On December 18, 2003, Riddle–Mills, the JCC human resources director, drafted an internal document addressing the Newman–Sondhelm situation (the memorandum). In relevant part, the memorandum listed four JCC employees to contact if Newman was seen in the aftercare wing of the JCC. The memorandum also detailed a protocol for handling situations involving Newman. Additionally, Riddle–Mills conducted a meeting with the aftercare program staff in which she detailed the protocol and asked the staff not to discuss the situation with others.

On April 21, 2006, Newman filed her third[1] amended complaint against the JCC, Riddle–Mills, Brown, Grimm, Jaffee, Aaron Atlas, Jaime Hubbard, Naomi Tropp, Joe Kinney, and "Unknown Employees" of the JCC, alleging defamation, invasion of privacy by false light, and invasion of privacy by intrusion claims and requesting punitive damages. *Id.* at 52–64. On May 3, 2006, the defendants filed a motion to dismiss the claims against Jaffee, Atlas, Hubbard, Tropp, Kinney, and the unknown JCC employees. Additionally, the defendants requested that the trial court dismiss Newman's invasion of priva-

---

1. Newman filed her original complaint in the Marion County Superior Court on October 24, 2005. Venue was changed to Hancock County on February 10, 2006, and Newman filed her second amended complaint on March 24, 2006.

cy by intrusion claim. The trial court granted the defendants' motion on May 22, 2006, dismissing various defendants and dismissing Newman's invasion of privacy by intrusion claim against the appellees.

On August 28, 2006, the appellees moved for summary judgment on the remaining counts, arguing that there was no evidence that the appellees had made the false statements of fact required for Newman to succeed on the defamation and invasion of privacy by false light claims. The trial court held a hearing on October 23, 2006, and granted the appellees' summary judgment motion on December 18, 2006. Newman filed a motion to correct error on January 17, 2007, which the trial court denied on February 20, 2007. Newman now appeals.

### DISCUSSION AND DECISION [2]

#### I. Dismissed Defendants

■ Newman argues that the trial court erroneously granted the defendants' motion to dismiss Jaffee, Atlas, Hubbard, Tropp, Kinney, and the unknown JCC employees (collectively, the dismissed defendants) from the action. Specifically, Newman argues that her complaint was sufficient to withstand the dismissed defendants' motion.

■ The trial court granted the dismissed defendants' motion pursuant to Indiana Trial Rule 12(B)(6). A motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *Harmony Health Plan of Ind. v. Ind. Dep't of Admin.*, 864 N.E.2d 1083, 1089 (Ind.Ct.App.2007). Therefore, we review the complaint in a light most favorable to the non-moving party, drawing every reasonable inference in favor of that party. *Id.* The trial court's grant of a motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Gorski v. DRR, Inc.*, 801 N.E.2d 642, 644–45 (Ind.Ct.App. 2003).

On appeal, the appellees first argue that Newman has waived this argument by failing to attach the trial court's May 22, 2006, order granting the dismissed defendants' motion to her notice of appeal. Indiana Appellate Rule 9(F)(1) provides that the appellant's notice of appeal "shall designate the appealed judgment or order and whether it is a final judgment or interlocutory order." While the appellees correctly note that Newman failed to attach the trial court's order to her notice of appeal, they do not direct us to case precedent holding that such error is fatal to an appellant's claim. Because of our penchant for addressing an appellant's claims on the merits, we decline to find that Newman has waived this issue on appeal and, instead, turn to the merits of her claim.

■ The law of defamation was created to protect individuals from reputational attacks. *Journal–Gazette Co., Inc. v. Bandido's, Inc.*, 712 N.E.2d 446, 451 (Ind. 1999). A defamatory communication is defined as one that " 'tends so to harm the reputation of another as to lower him in estimation of the community or to deter a

---

**2.** Newman briefly argues that the trial court erred by striking photographs referenced in paragraph 13 of her complaint and attached to the complaint as Exhibit A. Specifically, Newman argues that the photographs "show the exact site where the child was abused, and [the] ease with which the abuse occurred after hours near the end of a secluded wing of the JCC...." Appellant's Br. p. 46. After reviewing the trial court's order, we conclude that the trial court did not strike the photographs from Newman's complaint. Appellant's App. p. 46–47. While the trial court did strike various portions of the complaint, its order does not reference Exhibit A, paragraph 13, or the photographs.

third person from associating or dealing with him.'" *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 686 (Ind.1997) (quoting Restatement (Second) of Torts § 559 (1977)). To prevail on a cause of action for defamation, a plaintiff must prove four elements: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages. *Hamilton v. Prewett*, 860 N.E.2d 1234, 1243 (Ind.Ct.App.2007), *trans. denied.*

While interpreting Indiana's notice pleading provision[3] in the context of a defamation claim, our Supreme Court has held that

> even under notice pleading, a plaintiff must still set out the operative facts of the claim. Indeed, hornbook law stresses the necessity of including the alleged defamatory statement in the complaint. *See, e.g.,* 53 C.J.S. §§ 128–163; 9 Indiana Practice §§ 28.3–28.14. There is sound reason for this policy, as the absence of a statement in the complaint works a detriment on both the court and the defendant. The court is handicapped without the statement since, without it, the court cannot actually determine if the statement is legally defamatory. *Journal–Gazette Co., v. Bandido's Inc.*, 712 N.E.2d 446, 457 (Ind. 1999). The defendant is placed on an unfair footing since the absence of the statement denies her the opportunity to prepare appropriate defenses.... Permitting defamation actions to proceed without the inclusion of the alleged statement would sanction claims brought

by individuals who allege nothing more than that someone must have said something defamatory about them....

*Trail v. Boys and Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136–38 (Ind.2006).[4] After concluding that the plaintiff in *Trail* had not specifically pleaded his defamation claim, our Supreme Court affirmed the trial court's dismissal of his complaint pursuant to Trial Rule 12(B)(6). *Id.* at 137–38.

Newman's amended complaint alleges specific statements that Riddle–Mills, Brown, and Grimm made about Newman. Appellant's App. p. 55, 57. However, the complaint does not allege specific statements that the dismissed defendants made about Newman. Instead, without specifically naming the dismissed defendants, Newman's complaint generally alleges that

> the JCC, some or all of its employee Defendants herein, and Unknown Employees of JCC defamatorily communicated to the public that Dr. Newman had filed a false child abuse report, a matter which became common knowledge among JCC staff and parents of students in the JCC aftercare program, wherein hundreds of students are enrolled.

*Id.* at 56–57.

Newman argues that *"Trail* does not require a plaintiff to identify the specific speaker of the defamatory statement, but only requires 'the necessity of including the alleged defamatory statement in the complaint.'" Appellant's Br. p. 47 (emphasis omitted). We disagree. Contained

---

**3.** Indiana Trial Rule 8(A) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."

**4.** Newman argues that *"Trail* should operate prospectively, not retrospectively, since *Trail* was issued after [Newman's] case was filed, and the rule could not be clearly foreshad-

owed." Appellant's Br. p. 47. However, Newman fails to address how the Trail decision "overrul[ed] clear past precedent" or "decide[ed] an issue of first impression whose resolution was not clearly foreshadowed," as is required for a decision to apply prospectively. *Ray–Hayes v. Heinamann*, 768 N.E.2d 899, 900 (Ind.2002).

within the Supreme Court's holding that a plaintiff must identify the alleged defamatory statements in his complaint is the implication that the plaintiff must also identify the speaker of those statements. Here, Newman filed her complaint against nine named defendants and an unspecified number of additional unknown JCC employees. To allow Newman to proceed against the dismissed defendants when her complaint does not attribute any alleged defamatory statements to them would be unfair to those parties and hinder their preparation of an appropriate defense.

As our Supreme Court held in *Trail*, "merely making [ ] an accusation does not establish a [defamation] claim sufficiently to permit courts to determine its legal legitimacy. When all is said and done, [appellant's] complaint is little more than an allegation." 845 N.E.2d at 137–38. After appraising Newman's complaint, we conclude that it is little more than an allegation against the dismissed defendants. Because it does not attribute alleged defamatory statements to those parties, the trial court properly dismissed them from the action.[5]

## II. Dismissal of Invasion of Privacy by Intrusion Claim

In her complaint, Newman asserts claims for invasion of privacy by false light and invasion of privacy by intrusion. The trial court ultimately dismissed the latter claim, concluding that Newman had failed to state a claim upon which relief could be granted. On appeal, Newman argues that the trial court erred because the appellees invaded "her emotional solace while attending JCC activities because [Newman] was contemporaneously aware that the JCC had put her under surveillance, harassed her, interrogated her, and had people inside and outside the building keeping an eye on her." Appellant's Br. p. 45.

The tort of invasion of privacy includes four distinct injuries: (1) intrusion upon seclusion, (2) appropriation of likeness, (3) public disclosure of private facts, and (4) false-light publicity. *Munsell v. Hambright*, 776 N.E.2d 1272, 1282 (Ind.Ct. App.2002). To establish a claim for invasion of privacy by intrusion, "a plaintiff must demonstrate that there was an 'intrusion upon his or her physical solitude or seclusion, as by invading his or her home or other quarters.'" *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 524 (Ind.Ct.App.2001) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 117 at 854 (5th ed.1984)). Indiana courts "have narrowly construed the tort of invasion of privacy by intrusion." *Creel v. I.C.E. & Assoc., Inc.*, 771 N.E.2d 1276, 1280 (Ind.Ct.App.2002). While the tort "arguably embraces intrusion into emotional solace," *Munsell*, 776 N.E.2d at 1283, "[t]here have been no cases in Indiana in which a claim of intrusion was proven without physical contact or invasion of the plaintiff's physical space such as the plaintiff's home," *Creel*, 771 N.E.2d at 1280.[6] In *Cullison v. Medley*,

---

5. Newman also argues that the trial court abused its discretion by failing to hold Jaffee, Atlas, or Hubbard in contempt of court for "attempting to block[ ] deposition discovery by refusing to allow any depositions" and refusing to produce various documents. Appellant's Br. p. 53. Because we conclude that Newman's complaint does not state a claim for which relief could be granted against these defendants, the trial court did not abuse

its discretion by failing to sanction those parties or their attorneys.

6. The *Creel* court cited numerous Indiana cases. See *Ledbetter v. Ross*, 725 N.E.2d 120, 123 (Ind.Ct.App.2000) (holding that a single telephone call, involving no threats or abusive language, cannot as a matter of law be the basis for the tort of invasion of privacy by intrusion); *Terrell v. Rowsey*, 647 N.E.2d 662,

our Supreme Court held that the tort of invasion of privacy by intrusion "consists of an intrusion upon the plaintiff's *physical solitude or seclusion as by invading his home or conducting an illegal search.*" 570 N.E.2d 27, 31 (Ind.1991) (emphasis added).

In her complaint, Newman alleged that the appellees' "false and malicious communications . . . have invaded [Newman's] privacy by intentionally intruding into and interfering with [Newman's] interest in solitude and seclusion, both as to her person and as to her private affairs and concerns." Appellant's App. p. 63. Newman does not allege that the appellees invaded her physical personal space. Instead, she focuses on the appellees' alleged harassment and surveillance to support her claim.

While addressing a claim for invasion of privacy by intrusion where the plaintiff alleged that the defendants had harassed him in public, our Supreme Court held that public harassment allegations "would not constitute an actionable claim for invasion of privacy [by intrusion] because plaintiff has no legal right to be left alone on a public street or in a public place." *Cullison,* 570 N.E.2d at 31. Because Newman does not allege that the appellees invaded her physical personal space, the trial court did not err by dismissing this claim. Put another way, the facts alleged in Newman's complaint do not state a claim for invasion of privacy by intrusion;

thus, the trial court properly dismissed that claim.

## III. Discovery

■ The rules of discovery are designed to "allow a liberal discovery process, the purposes of which are to provide parties with information essential to litigation of the issues, to eliminate surprise, and to promote settlement." *Brown v. Katz,* 868 N.E.2d 1159, 1165 (Ind.Ct.App. 2007). The trial court has broad discretion in ruling on issues of discovery, and we will reverse only when the trial court has abused its discretion. *Id.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or when the trial court has misinterpreted the law. *Trs. of Purdue Univ. v. Hagerman Constr. Corp.,* 736 N.E.2d 819, 820 (Ind.Ct.App.2000).

### A. Protective Order

■ Newman first argues that the trial court erred by granting the appellees' motion for a protective order during discovery. The trial court issued the protective order after finding that the interrogatories Newman served on the JCC violated Hancock County Local Rule 12, which provides that "no party shall serve on any other party more than thirty interrogatories, including subparagraphs, without leave of Court." [7] Newman argues that "rather

---

667 (Ind.Ct.App.1995) (determining that there was no actionable intrusion where a defendant opened the plaintiff's car door while the plaintiff sat in the car, reached behind the driver's seat and grabbed an empty beer bottle, without making physical contact with the plaintiff); *Cullison v. Medley,* 570 N.E.2d 27, 31 (Ind.1991) (concluding that, while invasion of the plaintiff's home could constitute a claim for invasion of privacy, harassment of the plaintiff in a restaurant or on the public street outside his home could not).

**7.** Newman alleges that the appellees also violated Rule 12 by serving 22 interrogatories on Newman that contained "multi-compound questions totaling 127 interrogatory questions in all" and that the trial court's "dual standard for discovery" was prejudicial. Appellant's Br. p. 48, 50. Instead of filing a motion with the trial court or requesting that the appellees' attorneys reformat the allegedly-noncompliant interrogatories, Newman answered the interrogatories "in good faith." *Id.* at 48. Because Newman has not pre-

than directing [the appellees] to answer 30 of the interrogatories[, the trial court granted the protective order and] the JCC did not respond to any of [Newman's] interrogatories." Appellant's Br. p. 49.

We first note that the trial court's protective order decreed that the JCC "need not respond to [Newman's] first set of interrogatories until said interrogatories are served upon [the JCC] in compliance with Hancock County Local Rule 12, or further order of this Court." Appellant's App. p. 155 (emphasis added). The trial court did not prohibit Newman from serving additional interrogatories on the JCC and, instead, merely ordered that the JCC need not reply until said interrogatories complied with the local rules. This decision was within the trial court's discretion and Newman's argument to the contrary fails.

### B. Extension of Time

■ After the appellees filed their motion for summary judgment, Newman filed a motion for an extension of time to file her response, requesting a 90–day extension to "complete discovery prior to responding, including time to issue restated interrogatories." Appellant's Br. p. 49.

The trial court granted Newman's motion, but only gave her an additional thirty days.

On appeal, Newman argues that this "nominal amount of time was insufficient" and that the trial court abused its discretion by limiting Newman's ability to complete discovery. *Id.* at 49–50. As previously noted, the trial court has broad discretion to rule on issues of discovery, including motions for extension of time. *McGuire v. Century Surety Co.*, 861 N.E.2d 357, 360 (Ind.Ct.App.2007). In our view, the trial court's decision to grant Newman an additional thirty days to respond to the appellees' summary judgment motion was fair, judicious, and not an abuse of discretion. Therefore, Newman's claim fails.

### IV. Summary Judgment [8]

#### A. Standard of Review

Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Am. Home Assurance Co. v. Allen*, 814 N.E.2d 662, 666 (Ind.Ct.App.2004). A party seeking summary judgment bears the burden of making a prima facie showing that there

---

served any alleged error for appeal, we decline to address her argument further.

**8.** Newman first argues that the appellees were not entitled to deny various allegations in their answer to her complaint but later admit those same allegations for summary judgment purposes. The gravamen of this argument is that summary judgment was inappropriate because material facts must have existed since the appellees admitted facts for summary judgment that they had previously denied. Newman's argument is meritless. See *Gullett v. Smith*, 637 N.E.2d 172, 174 n. 2 (Ind.Ct.App.1994) (holding that "[i]n moving for summary judgment, a party concedes there are no issues of fact *only for purposes of his own motion*") (emphasis added). Because it was not improper for the appellees to

deny various allegations in their answer but admit those allegations for purposes of summary judgment, the trial court did not err by denying Newman's motion for sanctions against the appellees and their attorneys.

Newman also argues that the trial court erred by not construing the designated evidence in a light most favorable to her. Newman's brief contains a ten-page diatribe attacking fourteen of the trial court's twenty-two findings of fact. Appellant's Br. p. 18–27. The gravamen of Newman's argument is that the trial court misstated material facts and misconstrued the designated evidence. However, after reviewing the designated evidence for purposes of this appeal, we conclude that the trial court construed the evidence in accordance with summary judgment standards.

are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Tack's Steel Corp. v. ARC Constr. Co., Inc.,* 821 N.E.2d 883, 888 (Ind. Ct.App.2005). A factual issue is "genuine" if it is not capable of being conclusively foreclosed by reference to undisputed facts. *Am. Mgmt., Inc. v. MIF Realty, L.P.,* 666 N.E.2d 424, 428 (Ind.Ct.App. 1996). Although there may be genuine disputes over certain facts, a fact is "material" when its existence facilitates the resolution of an issue in the case. *Id.*

When we review a trial court's entry of summary judgment, we are bound by the same standard that binds the trial court. *Id.* We may not look beyond the evidence that the parties specifically designated for the motion for summary judgment in the trial court. *Best Homes, Inc. v. Rainwater,* 714 N.E.2d 702, 705 (Ind.Ct.App.1999). We must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 461 (Ind.2002). On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Sizemore v. Erie Ins. Exch.,* 789 N.E.2d 1037, 1038 (Ind.Ct.App.2003). A party appealing from an order granting summary judgment has the burden of persuading us that the decision was erroneous. *Id.* at 1038–39.

A grant of summary judgment may be affirmed upon any theory supported by the designated evidence. *Bernstein v. Glavin,* 725 N.E.2d 455, 458 (Ind.Ct.App.2000). While the trial court here entered specific findings of fact and conclusions of law in its order granting summary judgment for the appellees, such findings and conclusions are not required and, while they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Id.*

## B. Defamation

■ To prevail on a cause of action for defamation, a plaintiff must prove four elements: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages. *Hamilton,* 860 N.E.2d at 1243. Whether a communication is defamatory is generally a question of law for the court, but the determination becomes a question of fact for the jury if the communication is reasonably susceptible to either a defamatory or a non-defamatory interpretation. *Id.* To impose liability for defamation, a false statement of fact is required. *Bandido's,* 712 N.E.2d at 457. In determining whether a defamatory meaning is possible, we test the effect that the statement is fairly calculated to produce and the impression it would naturally engender in the mind of the average person. *Id.*

■ A communication is defamatory per se if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct. *Lovings v. Thomas,* 805 N.E.2d 442, 447 (Ind.Ct.App.2004). Damages are presumed even without proof of actual harm to the plaintiff's reputation if the communication is defamatory per se. *Id.* To maintain an action for defamation per se, the plaintiff still must demonstrate a communication with defamatory imputation, malice, and publication. *Kelley v. Tanoos,* 865 N.E.2d 593, 597 (Ind.2007).

### 1. Brown and Grimm

■ Newman argues that the statements Brown and Grimm made to Sondhelm were defamatory as a matter of law

and that the trial court erred by granting summary judgment in their favor. As detailed in the facts, two months after Sondhelm terminated Newman's social contact with M.S. and K.S., Brown and Grimm approached Sondhelm about Newman's behavior in their ECE class. As alleged in Newman's complaint, Brown and Grimm told Sondhelm that Newman had been "belligerent and demanding" and that she was disruptive in the classes and on class field trips. Appellant's App. p. 55.

Even taken in a light most favorable to Newman, we fail to see how Brown and Grimm's communications with Sondhelm constitute defamation as a matter of law. Brown and Grimm contacted Sondhelm to discuss Newman's behavior because, as Sondhelm explained in a deposition, they "needed to take care of the classroom and the children, and [ ] couldn't deal with the behavior from [Newman] being so insistent." *Id.* at 222.[9] Sondhelm's children were members of the ECE class. Thus, Brown and Grimm confronted Sondhelm because they were concerned about their students, including M.S. and K. S., and the negative effect that Newman's behavior was having on the class. Despite Newman's assertions to the contrary, Brown and Grimm's statements did not have a defamatory imputation.

Furthermore, while Newman's complaint alleges that Brown and Grimm made their statements "knowingly and maliciously," appellant's app. p. 55, there is no evidence that Brown or Grimm had malicious intent when they talked to Sondhelm. Instead, the women had their students' best interests in mind when they approached Sondhelm to discuss the effect her mother was having on the ECE class. In sum, because Brown and Grimm's statements did not have a defamatory imputation and were not made with a malicious intent, the statements were not defamatory as a matter of law and the trial court properly granted summary judgment in their favor.[10]

### 2. Riddle–Mills

■ Newman argues that the trial court erroneously concluded that Riddle–Mills's communications were not defamatory as a matter of law. Specifically, Newman argues that "[a]ny reasonable person reading the dozens of buzz words and phrases in the Riddle–Mills memos would believe that [Newman] was dangerous to children and others. This portrayal [ ] was patently false and intentionally malicious." Appellant's Br. p. 36–37.

As previously noted, Riddle–Mills is the director of human resources for the JCC. In response to Sondhelm's request that Newman not have contact with M.S. or K.S. without her permission, Riddle–Mills developed an employee protocol for the JCC aftercare staff because M.S. was involved in that program. Riddle–Mills's

9. Sondhelm's deposition, which was taken during the grandparent visitation action, is included in the designated evidence. Interestingly, although Newman was represented by her attorney-husband in that action and he was present at the deposition, Newman chose to depose her daughter herself. Appellant's App. p. 208.

10. Newman also argues that Brown and Grimm's statements constitute defamation per se because they imputed misconduct in Newman's trade or profession. Specifically,

Newman alleges that her regular "volunteering in the JCC ECE classrooms in an instructional capacity" constitutes her trade or profession. Appellant's Br. p. 34. Even assuming for the sake of the argument that Newman's volunteering constitutes her trade or profession, Brown and Grimm's statements are not defamation per se because we have already concluded that the statements were not made with malice or defamatory in nature.

memorandum was titled "Aftercare staff information" and was labeled "Confidential." Appellant's App. p. 71. In relevant part, the memorandum listed four JCC employees who should be contacted if Newman was seen in the aftercare area. The memorandum listed Riddle–Mills as the primary contact and provided that the alerted staff member should

> [c]almly ask [Newman] to move into a private area so that we can talk (away from the children). Let her know that we do not want to call security and would regret having to do so. Remind her that per [Sondhelm's] instructions, she is not to have access to or contact with [M.S.] while she is at the JCC and that without written permission from [Sondhelm] she will not be permitted to do so.
>
> If you are alerted [Newman] has left the premises, please question staff members involved and find out how long she was here, what she was doing while here, etc. and forward that information to me ASAP.

*Id.*

Riddle–Mills also held a meeting with unspecified JCC aftercare program employees reiterating the contents of the memorandum and including a physical description of Newman. Riddle–Mills emphasized that

> under no circumstances should you leave children unattended to report seeing Mrs. Newman. . . . I am speaking to you all as professionals today and I trust that this situation will be handled that way by you. Please do not discuss this with others nor among yourselves in the presence of the children in the program.

*Id.* at 72.

Newman and the appellees disagree about whether Riddle–Mills's communications were qualifiedly privileged. Our Supreme Court has held that a qualified priv-

ilege protects "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Kelley,* 865 N.E.2d at 597. Intracompany communications regarding the fitness of an employee are protected by the qualified privilege "in order to accommodate the important role of free and open intracompany communications and legitimate human resource management needs." *Schrader v. Eli Lilly & Co.,* 639 N.E.2d 258, 262 (Ind.1994). The qualified privilege of common interest also applies to intra-organizational communications regarding a volunteer. *Turner v. Boy Scouts of Am.,* 856 N.E.2d 106, 113 (Ind.Ct.App. 2006).

Here, JCC administrators have a common interest in protecting the welfare of the children involved in JCC programs. This common interest necessitates communication within the organization, including communication about Newman as a volunteer and as the subject of Sondhelm's request. Therefore, as human resources director, it was appropriate for Riddle–Mills to develop a protocol and it was necessary for her to communicate that protocol to the relevant JCC employees, including the aftercare program staff. Therefore, Riddle–Mills's communications were privileged.

 In order to defeat summary judgment, the burden is on Newman to establish that the qualified privilege was abused. *Cortez v. Jo–Ann Stores, Inc.,* 827 N.E.2d 1223, 1234 (Ind.Ct.App.2005). Abuse of the qualified privilege has occurred if: (1) the communicator was motivated primarily by feelings of ill will; (2) the communication was published excessively; or (3) the communication was made without a belief or grounds for belief in its truth. *Turner,* 856 N.E.2d at 113–14.

While Newman argues that "[d]efendants lost protection of any qualified privilege due to ill will," appellant's br. p. 28, Newman does not cite to any evidence that Riddle–Mills harbored ill will against her. To the contrary, the record reveals that Riddle–Mills developed an appropriate, confidential protocol. She limited her communications to relevant JCC employees and directed those employees not to discuss the situation with others. Therefore, we find that Riddle–Mills's communications were privileged and that there is no evidence that she abused this privilege.

Even assuming for the sake of the argument that the communications were not privileged, Newman's defamation claim still fails. As previously emphasized, Riddle–Mills's communications were made in response to Sondhelm's request that Newman not be allowed to contact M.S. or K.S. at the JCC. The memorandum contained a professional protocol addressing how to handle situations involving Newman and Riddle–Mills conducted a meeting with a select group of JCC employees to address the issue. We fail to see how these communications contained a defamatory imputation when the circumstances necessitated such action. Furthermore, aside from Newman's bare assertion that Riddle–Mills acted maliciously, there is no evidence in the record of such malice. Therefore, Newman has failed to prove two of the necessary elements for a successful defamation claim. While Newman criticizes the manner in which Riddle–Mills responded to Sondhelm's request, the designated evidence underlines the necessity for such a response and the professionalism with which Riddle–Mills handled the situation. Therefore, we conclude that Riddle–Mills's communications were not defamatory as a matter of law and that the trial court properly granted summary judgment in her favor.

### 3. False Child Abuse Report

In paragraph 18 of her complaint, Newman alleged that the appellees "intensified their defamatory communications regarding [Newman]" after she filed a report with the JCC alleging that an aftercare program employee abused a child. Appellant's App. p. 56. Newman's complaint alleged that the appellees "defamatorily communicated to the public that [Newman] had filed a false child abuse report, a matter which became common knowledge among JCC staff and parents of students in the JCC aftercare program, wherein hundreds of students are enrolled." *Id.* On appeal, Newman alleges that the trial court erred by dismissing this claim because the allegedly defamatory statements constitute defamation per se by impugning criminal conduct on Newman, specifically, that she falsely reported a crime.

We reemphasize our Supreme Court's holding in Trail that a plaintiff's complaint must identify specific defamatory statements that a defendant made so that the defendant can prepare an appropriate defense. 845 N.E.2d at 137. Here, in the context of the false child abuse report, Newman's complaint does not identify the specific defamatory statement or the alleged speaker. Instead, Newman asserts that because it became common knowledge among the JCC staff and the aftercare program members that Newman made a false child abuse report, one or all of the appellees must have defamed her. However, our Supreme Court held that "[p]ermitting defamation actions to proceed without the inclusion of the alleged statement would sanction claims brought by individuals *who allege nothing more than that someone must have said something defamatory about them.*" *Id.* (emphasis added).

The *Trail* holding goes to the heart of Newman's vague claim regarding the false

child abuse report, and she cannot succeed simply because she believes that one or all of the appellees said something defamatory. Therefore, the trial court properly granted summary judgment in favor of the appellees on this claim.

### C. Invasion of Privacy by False Light

■ Newman argues that the trial court erred by granting summary judgment against her on the invasion of privacy by false light claim because the appellees cast her in the light of a "false reporter of child abuse, subjecting [Newman] to intense rejection within the Jewish community." Appellant's Br. p. 43.

■ The tort of invasion of privacy is similar to defamation but reaches different interests. *Lovings,* 805 N.E.2d at 447. Defamation reaches injury to reputation, while privacy actions involve injuries to emotions and mental suffering. *Id.* In *Lovings,* we described the tort of invasion of privacy by false light as "publicity that unreasonably placed the other in a false light before the public." *Id.* In *Branham v. Celadon Trucking Servs., Inc.,* we quoted the Restatement of Torts, which provides that

> "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
>> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>>
>> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

744 N.E.2d 514, 524 (Ind.Ct.App.2001) (quoting Restatement (Second) of Torts § 652(E) (1977)). The *Branham* court held that a plaintiff could not succeed on an invasion of privacy by false light claim if the alleged communication was accurate. 744 N.E.2d at 525.

The crux of Newman's invasion of privacy by false light claim is her hypothesis that the appellees must have disseminated information that she filed a false child abuse report with the JCC. However, after receiving the report, the JCC conducted an investigation and ultimately concluded that "the behavior that took place was voluntary wrestling on both the part of [the employee] and the [child], and is not an uncommon occurrence [that was] not in any way malicious or misguided." Appellant's App. p. 522. Therefore, even assuming for the sake of the argument that the appellees[11] were responsible for the dissemination of the news that Newman filed a false child abuse report, Newman's claim still fails because that information does not cast a false light. Newman did file a child abuse report with the JCC, and the report was ultimately invalidated. In sum, Newman's invasion of privacy by false light claim fails because the disseminated information does not contain the falsity required for the tort. Therefore, the trial court properly granted summary judgment in favor of the appellees on this claim.

The judgment of the trial court is affirmed.

BAILEY, J., and MATHIAS, J., concur.

---

**11.** It is possible that the student involved in the allegations, the student's parents, or the JCC member who witnessed the incident told other people about Newman's child abuse report. Those individuals are not JCC employees. Appellees' Br. p. 18 n. 6; Appellant's App. p. 522.